No. 40,343

Lewis Johnson, *Appellant,* v. Skelly Oil Company, *Respondent* and Self Insurer.

(303 P. 2d 172)

Opinion filed November 3, 1956.

B. V. *Hampton*, of Pratt, argued the cause, and *Bill Murray*, of Pratt, was with him on the briefs for appellant.

*Ralph Cunnyngham*, of Tulsa, Oklahoma, argued the cause, and *Max C. Bucklin*, of Pratt, and *Louis B. Gresham*, of Tulsa, Oklahoma, were with him on the briefs for respondent.

The opinion of the court was delivered by

FATZER, J.: This appeal presents the question of whether written claim for compensation was served within the time prescribed by law, the point in issue being whether respondent furnished medical aid and hospitalization from about the time of the injury, which occurred October 29, 1953, until the date written claim was received on June 20, 1955, thus tolling the provisions of G. S. 1949, 44-520a requiring claim to be served within 120 days after the accident or after last payment of compensation.

The commissioner found that respondent furnished compensation to claimant in the form of medical aid and hospital treatment within 120 days prior to the receipt of the written claim, and entered an award in favor of claimant. On appeal, the trial court found that claimant had not sustained the burden of proof that medical services, hospitalization or other benefits were furnished by respondent having effect of tolling the statute, and reversed the award and dismissed the claim. Claimant has appealed, and specifies that the trial court erred as a matter of law in two respects: First, in reversing the award of the commissioner, and second, in finding that the evidence was insufficient to establish service of written claim for compensation within the time prescribed by law.

Claimant entered respondent's employ February 9, 1953, and continued in it until November 14, 1953. On Thursday, October 29, 1953, he was directed to clean the scale out of a boiler; in cleaning and washing the boiler it was necessary for him to slide back and forth in it and in doing so he scraped or bruised a protrusion

on his left leg and it became sore and raw. The protrusion was originally caused by the lodging of a .22 caliber slug in the calf of his leg many years ago. He said nothing that evening about his injury. He bathed it in alcohol at home and the next morning it was swollen, sore to touch, and half the size of a hen egg. Upon his return to work he reported the injury to his foreman Glen Pearson who examined his leg. He was asked if he could work and he said he could. The first of the following week Fred A. Fewin, respondent's superintendent, asked to see the leg and he showed it to him. The swelling had become progressively worse, growing slowly, and Fewin told him to see the doctor, that "If it was mine, I would be at the doctor right now." Claimant continued at light work until he went to see Dr. M. E. Christmann, of Pratt, Kansas, on November 7, 1953. He testified he went to Dr. Christmann's office because he was the company doctor. Prior to going to work for respondent and at respondent's request, he submitted to a physical examination by Dr. Christmann, and when he cut his finger in April, 1953, he was sent or taken to Dr. Christmann for medical care.

On November 9, 1953, the doctor lanced the abscess on his leg. A hard mass or tumor was found at the base of the abscess, which was removed. The infection from the abscess did not involve all the tumor but penetrated deep enough to involve the upper portion of it. On November 14, 1953, he returned to the doctor's office and was advised he had a cancerous condition in his leg and that an operation would be necessary. On November 16, 1953, he entered the Pratt County hospital for an operation on his leg and was released nine days later. He had been in the hospital four times for surgery and radium treatments on his leg; the second time in April, 1954, when he was released after 50 hours; the third time in January, 1955, when he was confined 18 days, and the fourth time in March, 1955, when he stayed 46 days. He received treatment periodically from Dr. Christmann until the date of the hearing and was never released by the doctor as being able to return to work. On September 23, 1955, the date of the hearing, he was under the care of the doctor and continued medical treatment was necessary.

The one question presented requires our giving consideration to two rules of this court: The first is, that whether a claim for compensation has been filed in time is primarily a question of fact (*Moore v. Dolese Brothers Co.*, 171 Kan. 575, 236 P. 2d 55) and

only in the event the evidence is undisputed, is the question one of law for appellate review (*Kober v. Beech Aircraft Corporation,* 177 Kan. 53, 55, 276 P. 2d 335); the second is, that the furnishing of medical aid and hospitalization by an employer to an employee is payment of compensation as the term is used in our Workmen's Compensation Act (G. S. 1955 Supp., 44-510; *Owen v. Ready Made Buildings, Inc.,* No. 40,394, and cases cited therein this day decided, where principles of law applicable thereto are discussed).

We are of the opinion there is no dispute in the evidence in the instant case and review the record to determine as a matter of law whether, under the facts, conditions and circumstances disclosed, respondent furnished medical treatment and hospitalization to claimant from about the time of the accident to the date written claim was received. If it did, then, under our decisions, the provisions of G. S. 1949, 44-520a were tolled and the claim was served in time.

The evidence may be summarized and quoted as follows: Claimant received no salary from respondent after November 16, 1953, the date he first entered the hospital; on one occasion after being released from the hospital he reported to Fewin at respondent's plant near Cunningham, Kansas, and asked if the report as to how he was hurt had been sent in and Fewin told him it had, so, "I thought that was all there was to it. They all told me when I was released it would be taken care of." Fewin made no promises to him nor were reasons given for not paying compensation but he was told it wouldn't be taken care of until he was released. Fewin told him this when they talked about the John Hancock hospital insurance plan offered by respondent to its employees for non-occupational injuries and gave him a booklet pertaining to it and he knew the insurance plan did not apply to industrial injuries. Fewin instructed claimant to assign his benefits under the hospital insurance plan to cover medical and hospital charges. Claimant told Fewin at that time that he didn't think the insurance plan would cover his injury because he was hurt on the job. Fewin said he thought it would and for claimant to take the assignments with him. Claimant took the assignments and executed them in favor of Dr. Christmann, Dr. Wolff and the Pratt County hospital to cover medical and hospital charges for services rendered during January and February, 1955. When asked the following questions claimant made the following answers:

"Q. At that time when you signed those papers, did you do so thinking that you had an industrial injury, in light of your testimony that you were aware that that policy did not apply to industrial injuries? A. When I came in, I came in knowing that I had an industrial injury; that is right. And when the superintendent said that that covered it anyway, he is my boss, I had to do as he said. Q. Is it not true that your superintendent said that your injury was being treated as a nonindustrial injury, and therefore, if you wanted to receive any benefits, you should file your John Hancock insurance forms? A. Well, he just told me he would have to send me in on the John Hancock insurance. Q. In other words, he told you, in effect, that your case was not being considered as a compensation case, in 1953? A. Well, he may have implied that but I didn't understand it that way. Q. Well, you signed these assignments? A. Well, I didn't know but what this other come on with it. I didn't know. Q. You just testified, Mr. Johnson, that you were aware that John Hancock insurance did not apply in case of industrial injury? A. That is right. Q. Your superintendent or foreman never indicated to you that this was being treated as a compensation case by Skelly Oil Company, did he? A. Well, he didn't say. Q. They never told you? A. Never told me it was or wasn't. The only times I have talked with Mr. Fewin, he said it was up to Skelly Oil Company and the doctors, . . ."

As superintendent, Fewin submits accident reports to respondent's Tulsa office. In this case he reported the *matter* but made no *accident report*. In a conversation with claimant in 1953 Fewin told him his injury was not industrial but if he wanted to process it under his John Hancock insurance, that was permissible. On November 17, 1953, Fewin conferred with Dr. Christmann concerning claimant's injury and Dr. Christmann did not seem to think claimant's difficulty was due to an accident but was from a tumor which had abscessed.

Dr. Christmann testified that he was in the employ of respondent as its physician in Pratt, Kansas, and that he administered continuous medical treatment and attended claimant during the period from November 9, 1953, to the date of the hearing; that he had been doing respondent's work for some time but had not received monthly Skelly pay roll checks and was not in that sense an employee of respondent but that he treated patients respondent sent to him and was paid by the individual case. He received a letter from respondent on May 21, 1954, making inquiry concerning claimant's case wherein it was stated, "If the injury was caused by his employment with Skelly Oil Company the claim would not be payable under this hospital plan." On June 24, 1954, he replied to respondent's inquiry and advised respondent the hospital had made

no demand for payment of claimant's hospitalization since it considered claimant's case still open and a continuation of care of the original treatment beginning November 16, 1953. His letter further states:

". . . In my record Mr. Johnson had a small mass in his leg at the sight of the trouble in question. At that time he was accepted for employment, which condition was aggravated or precipitated into the difficulty requiring the surgery and radium treatments.

"If your insurance advisor feels this case should be terminated before I have completely dismissed Mr. Johnson from treatment, please advise me so and I would appreciate an opinion as to their future ruling in handling injuries directly due to an accident from employment by *Skelly Oil Company, as* compared to some previous condition the patient may have had that was aggravated by said employment.

"At present Mr. Johnson shows a fair degree of radium reaction and some slough in the old operative scar area of his left leg, but I feel this will probably heal spontaneously. If it hasn't healed within a reasonable length of time a small skin graft of the area will be necessary."

In June, 1954, Dr. Christmann received a letter from respondent in which he was advised it did not consider claimant's injury an industrial injury and that it did not intend to pay him under the Workmen's Compensaton Act of Kansas for his services in treating claimant. He was never led to believe that respondent considered claimant's case as compensable but was advised it would not process his case in conformity with compensation requirements, however, respondent did not write claimant to this effect nor did Dr. Christmann advise him of respondent's position concerning treatment of his leg. Although Dr. Christmann was familiar with the hospital insurance plan offered respondent's employees for nonoccupational diseases he doubted if claimant ever filed for benefits under such plan, however, he recalled there were many forms filled out. He testified that the abscess was "intertwined with any other condition that existed in his (claimant's) leg, and this abscess resulting from *the blow did aggravate any condition that existed in his leg, normal or abnormal,"* and that if the abscess had been a small one he would have treated claimant probably a week or ten days.

We think the trial court erred as a matter of law in dismissing the claim. Under the facts as disclosed by the record claimant was warranted in assuming Dr. Christmann was respondent's doctor and that medical aid and hospitalization would continue to be available to him until he was released. Respondent's liability to

claimant is based upon the contract of employment, which includes the provisions of the Workmen's Compensation Act. (*Workman v. Kansas City Bridge Co.*, 144 Kan. 139, 58 P. 2d 90.) Under this act it had the duty to provide the services of a physician or surgeon and such medical, surgery and hospital treatment as might be reasonably necessary to cure or relieve the effects of claimant's injury. (G. S. 1949, 44-510.) Once it sent claimant to its doctor and assumed the responsibility of providing medical aid, claimant had the right to rely on respondent's action, and was relieved of serving written claim during the time he received compensation in the form of such medical aid. Respondent's superintendent knew the extent of claimant's injury because he conferred with Dr. Christmann on November 17, 1953, and on June 24, 1954, at respondent's request, Dr. Christmann forwarded to its Tulsa office a report of claimant's case. Respondent cannot relieve itself of liability by attempting to withdraw from furnishing medical aid to claimant as it attempted to do in June, 1954, when it informed Dr. Christmann that it did not consider claimant's injury compensable, and would not pay him for his services. Moreover, taking respondent's contention on its face, notice of termination of medical service to its doctor is not notice of such termination to the claimant. (*Angleton v. Foster Wheeler Construction Co.*, 177 Kan. 134, 138, 276 P. 2d 325.)

Respondent urges that Dr. Christmann was not on a retainer or on Skelly's pay roll as an employee; that he was paid for each individual case referred to him; that he was not its company doctor, and, consequently, it did not furnish medical aid to claimant for such reason. The argument is not persuasive. At respondent's direction Dr. Christmann gave claimant a pre-employment physical examination; when claimant cut his finger in April, 1953, he was sent or taken to him for treatment, and when claimant received the injury in question, he was sent to the doctor. Dr. Christmann had been doing respondent's work for some time and treated other employees sent to him, and the evidence warrants the inference he was respondent's doctor when claimant went to see him at respondent's direction. Moreover, it is generally understood that doctors in this state who are commonly known as the "company doctor" and who treat and care for injured employees of a company, are not on the pay roll or receive retainers from it, but are compensated by fee schedule for individual cases.

Respondent further contends that claimant knew the hospital insurance plan did not cover industrial or compensable injury, and since he made assignments of benefits under it he has not received compensation in the form of medical aid to effect a tolling of the statute. The record refutes the contention. The hospital insurance plan covered only nonindustrial injuries and the assignment of benefits thereunder is of no significance in determining respondent's rights and liabilities to claimant for compensable injury under the provisions of the Workmen's Compensation Act. Except as provided in G. S. 1949, 44-537, an employer is either under the act and subject to its terms or he is not, and the act does not contemplate that an employer, being subject to its terms, may arrange some insurance plan, which would provide for payments other than those prescribed by the terms of the act, and by making a few payments under such plan, persuade a claimant to take a course of action inconsistent with his rights under the act and then take advantage of claimant's position. (*Wells v. Eagle-Picher M. & S. Co.,* 148 Kan. 794, 802, 85 P. 2d 22.) Furthermore, the provisions of the act cover every phase of the right to compensation and the procedure for obtaining it; they are substantial, complete and exclusive and all issues pertaining to liability must be presented, heard and determined pursuant to its terms. (*Employers' Liability Assurance Corp. v. Matlock,* 151 Kan. 293, 98 P. 2d 456.)

Viewing the over-all picture, respondent recognized an obligation to claimant for medical aid and hospitalization as a result of his injury but chose to limit such obligation. It is not privileged to do so. Whether claimant suffered personal injury compensable under the act is to be determined by its provisions and not by respondent, who, after authorizing necessary medical aid and hospitalization to care for the injury sustained, privately adjudicated the injury as nonindustrial and instructed claimant his injury was not compensable but the cost of his medical care could be processed under its hospital insurance plan. Respondent cannot persuade claimant to take a course of action and then take advantage of his position. In *Wells v. Eagle-Picher M. & S. Co.* supra, this court held that payments made for medical care under an insurance plan, which did not conform to the act, were compensation and tolled the statute with respect to the time for filing claim. However, we do not rest our decision in the instant case on this point for the reasons heretofore stated.

We conclude the facts, conditions and circumstances disclosed by

the record clearly indicate respondent provided compensation in the form of medical aid and hospitalization to claimant during the period in question, and that written claim for compensation served June 20, 1955, was within the time prescribed by G. S. 1949, 44-520a.

The judgment is reversed with directions to the trial court to set aside its order dismissing the claim for compensation, and to proceed in accordance with the provisions of the Workmen's Compensation Act.

It is so ordered.