No. 40,776

NETTIE MADISON, *Appellant*, v. KEY WORK CLOTHES, INC., Respondent, *Appellee*, EMPLOYERS MUTUAL LIABILITY INSURANCE COMPANY, Insurance Carrier, *Appellee*.

(318 P. 2d 991)

Opinion filed December 7, 1957.

*Walter B. Patterson*, of Fort Scott, argued the cause, and *Sylvan Bruner* and *Charles J. Rondelli*, both of Pittsburg, were with him on the briefs for appellant.

*Paul L. Wilbert*, of Pittsburg, argued the cause, and *A. B. Keller*, and *Randall D. Palmer*, also of Pittsburg, were with him on the briefs for appellees.

The opinion of the court was delivered by

SCHROEDER, J.: This is a workmen's compensation case. The trial court entered judgment denying an award of compensation, thereby affirming the ruling of the workmen's compensation commissioner, and the claimant appeals.

Claimant was an employee of respondent and had been continuously so employed for about five years. Claimant operated a sewing machine in the making of clothing in respondent's factory located in Fort Scott. She was required to check in between 7:15 and 7:30 in the morning. On the morning of January 24, 1956, when she walked to respondent's factory from her home, a block and a half away, it was snowing. It had snowed in the night and the snow continued, causing the ground to be covered with ice and snow.

Respondent's factory faces south on Wall Street in Fort Scott. In order to enter the factory on her way to work, claimant had to cross Wall Street. The proper route for claimant to cross Wall Street was at the intersection on a crosswalk, but claimant crossed Wall Street on the morning of January 24, 1956, on her way to work diagonally in a northwesterly direction. After crossing the street in this manner she had to cross a sidewalk abutting on the south side of the factory. At the time of crossing Wall Street claimant was in the company of another employee. While crossing the sidewalk claimant slipped and fell and suffered broken bones in her leg and hip. A number of other employees saw her fall. She was taken in a taxi to the hospital where her bones were set. After about three weeks an infection or deterioration of the bones developed and she has not recovered. She had been in the hospital continuously to the date of hearing before the examiner, February 20, 1957.

The south wall of respondent's factory building is adjacent to the sidewalk which is 11 feet 5¾ inches wide, from the curb of the street to the wall. The door in the wall through which employees entered the factory was the main entrance and is approximately 20 feet west of the corner of the factory building which is situated on the northwest corner of the intersection. The door is recessed 2 feet and 10 inches from the sidewalk. Wall Street is paved with brick.

There was some conflict in the testimony concerning the exact spot in which claimant fell, she testified that she had fallen with her hand on the entrance door handle. All other witnesses who saw claimant fall testified that she had fallen near the curb. The trial court's findings of fact numbered 5 and 6 state:

"5. The Claimant, wearing boots, proceeded with another employee from a southeasterly direction across the street and at the north curb and south edge of the sidewalk she fell. Evidence is not clear whether she slipped as her foot was leaving street level or when she stepped on the walk, but she was down some 3 feet north of the south edge of the sidewalk and 6 or 7 feet south of the doorway.

"6. There was an accumulation of several inches of snow and ice on the landscape including the sidewalk and there was no clearing or other treatment of the walk in front of the door. It was snowing at the time and continued some hours thereafter. The snow was cleared at this point the next morning."

On February 27, 1956, K. W. Pollock, president of respondent company, dictated a letter which was sent to claimant. The pertinent portion of this letter reads:

"P. S. I think we can make some arrangements to help you with your financial problems while you are completing recovery after you get out of the hospital. It appears probable that the accident will not be covered by the compensation insurance. However, as I told you, we will pay for the medical and hospital expenses above the blue cross and blue shield coverage. I have some hopes that we might be able to get this from the insurance company, but will consult my lawyer regarding this in more detail when I get a chance."

On March 29, 1956, Mr. Pollock again sent a letter to claimant, the pertinent portion of which reads:

"I went up to see Walter Patterson, and he showed me an agreement signed by you, appointing him as your attorney to make a claim on us for workmen's compensation . . . since you are apparently taking this kind of legal action, no doubt, I had better cease any other form of assistance to you, . . . on this matter the insurance man seemed to be fairly confident that compensation would not be due in a case of this nature . . . it certainly appears that we should do nothing further pending this compensation action which Patterson is bringing. I had also guaranteed Mercy Hospital that I would take care of the bill in excess of your Blue Cross and Blue Shield benefits, but in view of this development, I am terminating this agreement with them. I will, of course, expect any compensation you receive to cover your hospitalization costs and so forth to be applied against any portion of the bill which we might otherwise have to pay."

The foregoing statement represents a substantial portion of the facts summarized from the findings made by the trial court in this

action. Upon the record before us, we do not hesitate to say that such findings are supported by substantial evidence. Other findings of the trial court will be indicated as the opinion progresses.

The jurisdiction of the supreme court on appeal in a workmen's compensation case is specifically limited to the determination of questions of law. As to questions of fact this court reviews the record only to determine whether it contains substantial evidence to support the trial court's finding, and in so doing, all the evidence is reviewed in the light most favorable to the prevailing party below. If substantial evidence appears such finding is conclusive and will not be disturbed on review. (*Fitzwater v. Boeing Airplane Co.,* 181 Kan. 158, 309 P. 2d 681.) The latest application of the rule is found in *Wilbeck v. Grain Belt Transportation Co.,* 181 Kan. 512, 313 P. 2d 725; and *Murray v. Ludowici-Celadon Co.,* 181 Kan. 556, 313 P. 2d 728.)

The principal question presented for review is whether claimant's injuries arose out of and in the course of her employment. Appellant argues that this case comes within the "on the premises" rule and cites many cases holding that where an injury occurs to an employee while on the premises of the employer it is compensable under the workmen's compensation act. (*Sedlock v. Mining Co.,* 98 Kan. 680, 159 Pac. 9; and *Corpora v. Kansas City Public Service Co.,* 129 Kan. 690, 284 Pac. 818.)

The question presented for review to this court brings into direct focus the provisions of G. S. 1949, 44-508k, which reads:

"The words 'arising out of and in the course of employment' as used in this act shall not be construed to include injuries to the employee occurring while he is on his way to assume the duties of his employment or after leaving such duties, the proximate cause of which injury is not the employer's negligence."

The most recent case decided by this court where an employee was injured "off the premises" and in which compensation was denied is *Murray v. Ludowici-Celadon Co.,* supra. This case is directly in point and controls the decision herein with respect to the place where claimant was injured. In the *Murray* case claimant, after he had ceased working and was on his way home, fell on ice and snow covering an alley on both sides of which the respondent maintained a parking lot for the employees. This court there held that the injury did not arise out of and in the course of employment, where the proximate cause of his injuries was not due to the re-

spondent's negligence, and the respondent had assumed no responsibility over or duty to maintain the alley free from snow and ice.

The only distinction between the *Murray* case and this is that there the employee was on his way home from work and here the claimant was on her way to work. The *Corpora* case was distinguished in the *Murray* case.

Other cases where the claimant had not yet reached the place of his employment in which this court held that the accident did not arise out of or in the course of his employment, and compensation by reason thereof denied, are *Harrison v. Lozier-Broderick & Gordon,* 158 Kan. 129, 145 P. 2d 147; and *Jones v. Lozier-Broderick & Gordon,* 160 Kan. 191, 160 P. 2d 932.

In the case of *Abbott v. Southwest Grain Co.,* 162 Kan. 315, 176 P. 2d 839, a workman on the way from his home to the elevator of his employer under instructions from his employer to close some open grain bin doors, after the workman had already gone home for the evening, was denied compensation for injuries sustained on the highway before arriving at the elevator. It was there held that the provisions of the statute (G. S. 1949, 44-508k) are clear, unambiguous, complete in themselves and do not permit judicial construction. They mean exactly what they say, that the words "arising out of and in the course of employment" shall not be·construed to include injuries to an employee while he is on the way to assume the duties of his employment, and there is nothing to warrant a holding that there are any exceptions to its plain and unequivocal provision.

It has frequently been said that the purpose of the workmen's compensation act is to burden the industry with the economic loss to a workman, or his dependents, resulting from accidental injury sustained by the workman, not only in the course of his employment, but which was caused by, or arose out of, his employment. It was not the purpose of the workmen's compensation act that the employer should in all respects be an insurer of the employee. The employer is an insurer only for those accidental injuries caused or produced in some way by the employment. A showing of some causal connection between the employment and the accident is required. (*Rush v. Empire Oil & Refining Co.,* 140 Kan. 198, 34 P. 2d 542; *Hilyard v. Lohmann-Johnson Drilling Co.,* 168 Kan. 177, 211 P. 2d 89; and *Teague v. Boeing Airplane Co.,* 181 Kan. 434, 312 P. 2d 220.)

The workmen's compensation act shall be liberally construed in order to effectuate the real and genuine purpose and intent of the lawmakers. But an interpretation that would create liability under circumstances where the legislature declared liability should not attach, where the injury does not arise out of hazards of the employment and where the proximate cause of the injury is not the employer's negligence, is not liberal interpretation but nullification of the plain legislative purpose and intent.

Textwriters and decisions of the courts of last resort in other jurisdictions have been cited extensively by the parties to this appeal, and some jurisdictions have expanded recovery in workmen's compensation cases to include injury received when an employee is "going and coming," if, in such a case, injury does not occur on the premises, but in close proximity to the place of work and on a road or other way intended and contemplated by the contract as being the exclusive means of access to the place of work. (*DeConstantin v. Pub. Serv. Commission,* 75 W. Va. 32, 83 S. E. 88, L. R. A. 1916A, 329; and *Hills v. Blair,* 182 Mich. 20, 148 N. W. 243.) Kansas, however, has not adopted this rule. *Sedlock v. Mining Co.,* 98 Kan. 680, 159 Pac. 9, though citing with approval the *DeConstantin* case from West Virginia, involved facts in which the employee, a miner, was actually on the premises of the employer and still down in a mine when he received injury.

Claimant argues in the case at bar that the point where she fell on this sidewalk was an integral part of the premises of the employer at the only entranceway to the building, and was under the exclusive control and supervision of respondent as far as the employees of Key Work Clothes were concerned. On the contrary, the trial court found that claimant was on her way to work and that she slipped as her foot was leaving the street level or when she stepped on the public walk and that by reason thereof she was not on the premises of the respondent. This finding cannot be disturbed since there is substantial competent evidence in the record to support it.

Many Kansas authorities dealing with G. S. 1949, 44-508k, were considered in *Teague v. Boeing Airplane Co.,* supra, where the facts were similar to those herein except that in the *Teague* case the particular spot in the parking area where claimant slipped and fell, because of an icy condition, was entirely *fenced by and under the exclusive control and supervision of the respondent.* There claimant

was awarded compensation. In the instant case the respondent had no exclusive control over the public sidewalk to the south of its building on Wall Street.

Claimant contends that it was the duty and obligation of the respondent to maintain the entranceway and the area pertaining thereto either free of ice or snow or use cinders or some other substance to make the area safe. This relates to negligence. Is the application of G. S. 1949, 44-508k, in the case at bar avoided by the last clause thereof which reads, "the proximate cause of which injury is not the employer's negligence"?

We have been cited to no decision, nor has our research disclosed any, in which a decision on negligence under the foregoing section of the statute has been made. Normally workmen's compensation is based on the theory of taxing the industry for the loss sustained by accidental injury to a workman while employed in such industry, and compensation is to be paid regardless of the negligence of the employer or even the fault of the workman. (*Welden v. Edgar Zinc Co.*, 129 Kan. 422, 283 Pac. 618.)

Where an employee sustains injuries occurring while he is on his way to assume the duties of his employment or after leaving such duties, the proximate cause of which injury *is* the employer's negligence, they are injuries arising out of and in the course of employment under G. S. 1949, 44-508k. This is the only construction that gives expression to the legislative intent of the statute.

The question thus resolves into whether there was negligence on the part of the respondent that was the proximate cause of claimant's injuries. On this point the trial court incorporated the following in its journal entry:

"As to the negligence of respondent in not having the snow and ice cleared from the sidewalk, we observe that it would have been prudent to have done so and it was done the next morning. But the sidewalk being public and respondent having done nothing to cause the condition and further it being in the middle of a big snow storm, they were not negligent."

We construe this to be a finding that respondent was not negligent in failing to remove the snow and ice on the public sidewalk at the time and place where claimant fell. For negligence to exist there must be a duty and a breach thereof before the conduct becomes actionable. If no duty exists there can be no negligence. Here again the evidence presented by the record is sufficient to support the finding made by the trial court. The evidence disclosed

that it had been snowing during the night before claimant sustained the injury, that it was snowing at the time claimant fell and that it was snowing after she fell.

As a general rule there is no absolute duty to keep public sidewalks free from ice or snow at all times. Where the precipitation is recent or continuous, the duty to remove such obstruction as it forms cannot be imposed, and the dangers arising therefrom are viewed as the normal hazards of life, for which no owner or person in possession of property is held responsible. (*Goodman et al., Aplnts., v. Corn Ex. B. & T. Co. et al.,* 331 Pa. 587, 200 A. 642.) This disposition of the point on negligence does not require that we venture into the contributory negligence of an employee. Whether this court would recognize contributory negligence as a defense we do not here or now decide.

Generally, aside from the workmen's compensation statute here in point, an owner of abutting property is not liable for injuries suffered by a pedestrian caused by a defect in the sidewalk unless the defect was such as to constitute a nuisance. (*Dixon v. Railway Co.,* 104 Kan. 404, 179 Pac. 548; *Moore v. Winnig,* 145 Kan. 687, 66 P. 2d 372; *Pierce v. Jilka,* 163 Kan. 232, 181 P. 2d 330; and *Smith v. Krebs,* 166 Kan. 586, 203 P. 2d 215.)

Claimant relies on *Tipton v. Street Railway Co.,* 89 Kan. 451, 132 Pac. 189, where this court held that evidence of additional precautions and subsequent repairs was competent for the purpose of showing that the place where the injury was received was under the control of the defendant. But that is not the situation here where snow had been falling and was falling at the time of claimant's injury.

Another line of workmen's compensation cases, somewhat analogous, recognizes the increased hazard of a workman by reason of exposure to the elements. (*Taber v. Tole Landscape Co.,* 181 Kan. 616, 313 P. 2d 290; *Murphy v. I.C.U. Const. Co.,* 158 Kan. 541, 148 P. 2d 771; and *Rush v. Empire Oil &Refining Co.,* supra.) In these cases there is no liability for injury from the elements, as from lightning, cyclone, heat, cold, or the like, unless the employment in some specific way reasonably can be said to have increased the workman's hazard to such element. Unless some causal connection is shown between the conditions under which the work is required to be performed and the resulting injury caused by such element

there can be no recovery. This excludes an injury which cannot fairly be traced to the employment as a contributing proximate cause and which comes from a hazard to which the workman would have been equally exposed apart from the employment. The causative danger must be peculiar to the work and not common to the neighborhood. It must be incidental to the character of the business and not independent of the relation of employer and employee. (*Walborn v. Fireproofing Co.*, 147 O. S. 507, 72 N. E. 2d 95.) Because of the condition of ice and snow prevailing throughout the vicinity of Fort Scott at the time claimant fell and sustained her injuries, all persons traveling on foot were exposed to the same dangers.

The claimant's next contention is that the respondent has assumed full liability for compensation to the claimant by the letter written on February 27, 1956.

Claimant refers to the letter written on March 29, 1956, as indicating the type of employer for whom claimant worked. As authority for the respondent's contention *Johnson v. Skelly Oil Co.*, 180 Kan. 275, 303 P. 2d 172, is cited. In that case the respondent recognized an obligation to the claimant for medical aid and hospitalization as a result of his injury but chose to limit such obligation. This court there held that the respondent was not privileged to do so and stated that whether claimant suffered personal injuries compensable under the act was to be determined by its provisions and not by the respondent, who, after authorizing necessary medical aid and hospitalization to care for the injury sustained, privately adjudicated the injury as not industrial and instructed claimant his injury was not compensable, but that the cost of his medical care could be processed under its hospital insurance plan.

Clearly, the situation here presented was not before the court in the *Johnson* case. The question there was whether written claim had been filed within 120 days after respondent last furnished medical aid.

The claimant argues that by the letter of February 27, 1956, the employer recognized both its legal and moral obligation, and cites *Brunhoeber v. Brunhoeber*, 180 Kan. 396, 304 P. 2d 521, in support of its argument that the letter was sufficient to bind the employer, if only a moral obligation existed. The *Brunhoeber* case involved a divorce and arose out of a factual situation existing between the

husband and wife that has no similarity to the case presently before the court. Liability under the workmen's compensation act is not imposed upon *moral* obligations where no legal obligation exists.

It is clear from the letters previously set forth in this opinion that the respondent did not recognize an obligation under workmen's compensation insurance. In the first letter it was said "It appears probable that the accident will not be covered by the compensation insurance." The second letter further emphasized that the respondent did not regard the injury as one compensable under workmen's compensation insurance.

Under the workmen's compensation act employers are required by law to report any accident, or claimed or alleged accident, to any employee which occurs in the course of his employment within seven days after the receipt of knowledge. (G. S. 1955 Supp., 44-557.) Even employers who have elected not to come under the act are required to comply with these provisions. Obviously, a mere compliance with the statutory requirement of reporting accidents cannot be regarded as an admission by the carrier that the compensation commissioner has jurisdiction to make a compensation award. (*Krouse v. Lowden*, 153 Kan. 181, 109 P. 2d 138.) It was held in the *Krouse* case that filing a report of accident with the Kansas workmen's compensation commissioner, and furnishing medical and hospital attention to the employee did not estop respondent from denying the commissioner's jurisdiction. It was further held that under the facts there presented the furnishing of medical aid constituted no waiver of the plea to jurisdiction. The court there recognized the holding of certain cases where furnishing medical aid is equivalent to the payment of compensation, but said they are not in point in determining the question of jurisdiction itself, where, from the very beginning of the proceeding, the employer denied the jurisdiction of the compensation commissioner.

Sound public policy requires that the voluntary payment of medical expenses or other benefits by a respondent to an employee who has sustained an injury, should never constitute an admission of liability to the detriment of such payor. Such payments are often made as the result of humane impulse on the part of the employer and such a policy should be encouraged rather than discouraged. (See, *Scholz v. Industrial Comm.*, 267 Wis. 31, 64 N. W. 2d 204.)

"The Good Samaritan placed an injured and unfortunate man upon his own beast, poured wine and oil into his wounds, and paid his maintenance charges

at the inn. He generously promised to give even more, if necessary, upon his return. Even so, through the ages, no man has yet suggested that he, by his conduct, impliedly admitted that he was liable for the injuries the poor man sustained. . . .

" 'It was an act of mercy which no court should hold in any respect was an implied admission or circumstance tending to admit liability. If a court should so hold, it would tend to stop, instead of encourage, one injuring another from giving aid to the sufferer. It would be a brutal holding, contrary to all sense of justice and humanity.' . . ." (*Biddix v. Rex Mills*, 237 N. C. 660, 664, 75 S. E. 2d 777.)

In *Taylor v. Taylor*, 156 Kan. 763, 137 P. 2d 147, the respondent admitted and the insurance carrier denied that the injury arose out of and in the course of employment. This court there held, after reviewing the terms of the insurance policy and the extent of its coverage, the mere fact the father was willing for an award to be made against him in favor of his son did not confer jurisdiction upon the compensation commissioner to make such an award.

Both the commissioner and the district court recognized the instant case to be one of hardship but denied an award of compensation on the ground that the injury sustained by the claimant was not covered by the workmen's compensation act. After fully considering all of the facts and circumstances presented by the record and having considered the contentions advanced by the claimant with respect thereto, we conclude that the judgment of the district court denying an award of compensation should be and hereby is affirmed.

ROBB, J. (concurring in part and dissenting in part): I find myself unable to concur with paragraph 4 of the syllabus and the corresponding portion of the majority opinion and I must dissent therefrom in view of the commitment of this court to the rule of liberal construction of our workmen's compensation act in favor of the employee. To my way of thinking to pronounce such a broad rule which would definitely tend to inure to an employer's benefit is an affirmative step in the opposite direction from our liberal construction theory. This case admittedly presents a very close question but in my opinion such a general rule of law as that stated in paragraph 4 of the syllabus is too far-reaching under the circumstances. Otherwise, I concur in the majority opinion.