No. 42,572

Grace A. Dexter (Claimant), *Appellee*, v. Wilde Tool Company, Inc., a Corporation (Respondent), and Consolidated Underwriters, a Reciprocal Insurance Exchange (Insurance Carrier), *Appellants*.

(365 P. 2d 1092)

Opinion filed November 10, 1961.

*Charles L. Davis, Jr.*, of Topeka, argued the cause, *Howard A. Jones, William E. Haney, Frank M. Rice* and *Sterling S. Waggener*, all of Topeka, *Robert M. Finley* and *Harry E. Miller*, both of Hiawatha, were with him on the briefs for the appellants.

*Harold E. Doherty*, of Topeka, argued the cause, *James E. Benfer*, of Topeka, and *Richard W. Shaw*, of Hiawatha, were with him on the briefs for the appellee.

The opinion of the court was delivered by

Schroeder, J.: This is a workmen's compensation case in which the respondent and its insurance carrier appeal from a judgment of the district court of Brown County, Kansas, which affirmed an award of compensation to the claimant by the workmen's compensation commissioner.

Aside from the claimant's (appellee's) motion to dismiss, the only question presented for review is whether the written claim for compensation was filed within the time required by the workmen's compensation act.

The trial court made the following findings of fact:

"The relationship of employer and employee existed between the claimant

and respondent herein on September 6, 1958, and at all pertinent time mentioned herein. That the claimant was employed by The Wilde Tool Company an at average weekly wage of $57.50; that the parties were governed by the Kansas Workmen's Compensation Act. The Consolidated Underwriters were the insurance carrier for the respondent. That on September 6, 1958, the claimant met with an accidental injury which arose out of and in the course of employment with the respondent. That the employer had notice of claimant's injury and actual knowledge of the accident on September 7, 1958, and the employer made its employer's report of accident to the Kansas Workmen's Compensation Commission on September 15, 1958.

"The *claimant employed Dr. Converse to treat her for said injuries* and the employer acquiesced in this selection and furnished medical care and paid all medical expense of the claimant in connection with this accident until she returned to work for her employer on January 19, 1959. That on May 22, 1959, claimant reinjured her back or aggravated the previous condition, and the employer's report of the accident of May 22, 1959, was filed June 6, 1959. *That on May 26, 1959, the claimant went to Dr. J. F. Binkley for treatment and he continued to treat her until June 26, 1959.* That on July 7, 1959, the Consolidated Underwriters wrote to Dr. J. F. Binkley which they stated that they were arranging to have claimant examined at the University of Kansas Medical Center, and *until we have the benefit of their examination we cannot authorize any additional treatment by anyone.*

"*The employer acquiesced in her treatment by Dr. Binkley.* That as a result of the claimant's accident on September 6, 1958, she was temporarily totally disabled until January 19, 1959, and the claimant aggravated or reinjured herself on May 22, 1959, and again became temporarily totally disabled and is so disabled at the present time." (Emphasis added.)

Thereupon the trial court concluded the proceedings were duly filed in time as provided by the workmen's compensation act, and that the claimant was entitled to 415 weeks temporary total disability at the rate of $34 per week from September 7, 1958, to January 19, 1959, and from May 22, 1959, until fully paid. Further appropriate orders were made with respect to the award of compensation.

The date which gives rise to the controversy on appeal was not mentioned by the district court in its findings. The respondent and its insurance carrier contend that formal written claim was not made by the claimant until the 15th day of December, 1959, and that by reason thereof the claim is barred by the 180-day limitation under the workmen's compensation act.

While the workmen's compensation commissioner made a similar award of compensation to the claimant, it should be noted his findings of fact were not in all respects in accordance with the findings made by the trial court. The commissioner found *"the*

*employer having had notice and actual knowledge of the accident on September 6, 1958,* and further, the employer having failed to file the report of accident within seven days as provided in G. S. 1949, Section 44-557, as amended, limitation of time for serving written claim for compensation was and is tolled and the time for instituting these proceedings extended to one year from the last payment of compensation; that last payment of compensation was made in January, 1959; and that these proceedings were brought within time."

The appellants go into great detail concerning the evidence as to whether the employer's report of accident was made within seven days after the date of injury. A discussion of the various contentions would be at best academic. We shall assume, as the district court found (the 14th day of September, 1953, being a Sunday), that the employer's report of accident was filed within the seven-day limitation provided in G. S. 1959 Supp., 44-557, and that the claimant was required to file a written claim for compensation within 180 days after the accident, or where compensation payments have been suspended, as here, within 180 days after the date of the last payment of compensation, pursuant to G. S. 1959 Supp., 44-520a.

Under the foregoing statute it has been held the furnishing of medical treatment by an employer or its insurance carrier to a workman, following injury compensable under the workmen's compensation act, is tantamount to payment of compensation. Therefore, the 180-day period of limitation begins to run from the time medical treatment was last furnished to the claimant by the respondent. *Moore v. Dolese Brothers Co.,* 171 Kan. 575, 236 P. 2d 55; *Angleton v. Foster Wheeler Construction Co.,* 177 Kan. 134, 276 P. 2d 325; and *Johnson v. Skelly Oil Co.,* 180 Kan. 275, 303 P. 2d 172.)

The foregoing rule was recognized in *Solorio v. Wilson & Co.,* 161 Kan. 518, 169 P. 2d 822, but on the facts there presented it was held the procurement of medical treatment on his own account by an employee claiming to have suffered injury, after refusal or neglect of his employer to furnish such medical attention, is not tantamount to the payment of compensation under the act, and does not toll the running of the period of time within which a claimant must make and serve a claim for compensation.

The question therefore arises whether there is any substantial competent evidence in the record to sustain the finding of the trial

court that the medical services of Dr. Binkley to the claimant were actually furnished by the respondent. If so, the respondent paid compensation to the claimant through June 26, 1959, and the formal written claim was filed within 180 days thereafter as required.

As to questions of fact this court reviews the record only to determine whether it contains substantial evidence to support the trial court's finding, and in doing so all the evidence is reviewed in the light most favorable to the prevailing party below. If substantial evidence appears, such finding is conclusive and will not be disturbed on review, even though the record discloses some evidence which might warrant the trial court making a finding to the contrary. (*Fitzwater v. Boeing Airplane Co.*, 181 Kan. 158, 309 P. 2d 681; *Heer v. Hankamer Excavating Co.*, 184 Kan. 186, 334 P. 2d 372; *Weimer v. Sauder Tank Co.*, 184 Kan. 422, 337 P. 2d 672; and *Wilson v. Santa Fe Trail Transportation Co.*, 185 Kan. 725, 347 P. 2d 235.)

It is the appellants' contention that the finding of the trial court, as to the acquiescence of the respondent in the claimant's treatment by Dr. Binkley, was based entirely upon the letter written by the respondent's insurance carrier to Dr. Binkley on the 7th day of July, 1959.

Actually, what the trial court meant by its ultimate finding that the respondent acquiesced in the claimant's treatment by Dr. Binkley must be determined from all the evidence in the case favorable to the claimant, and cannot be limited merely to the finding that respondent's insurance carrier wrote the letter in question to Dr. Binkley.

Logically, it would seem that a letter of this character to the doctor treating the claimant for injuries suffered on the job, stating that additional treatment could not be authorized until the claimant had been examined at the University of Kansas Medical Center, would leave the impression that prior treatment by Dr. Binkley was authorized by the respondent. This interpretation is fortified by other evidence in the record. The claimant testified, sometime after she had returned to work on January 19, 1959, that she told Thomas F. Sullivan, supervisor for the respondent, she could not continue working. The testimony was:

"Q. Now, you have testified that you went to Tom Sullivan to talk about going to a doctor again.

"A. Tom Sullivan was standing at the table when I said something about,

'Should I go to a chiropractor', and Tom Sullivan told me it would be all right, so that is the reason I went.

"Q. And I believe you did testify on cross-examination at the last one of these hearings, that you were the one who named Dr. Binkley and that it was not Mr. Sullivan who named Dr. Binkley?

"A. No. He didn't tell me who to go to.

"Q. He didn't tell you Dr. Binkley?

"A. No. I just told him I'd go to a chiropractor, and he said that was fine.

"Q. But Dr. Binkley was your idea?

"A. Yes, because he is right there in town. I knew I'd have to be—"

It is also clear from the record that the respondent knew the claimant was claiming compensation. When the claimant went to the respondent on the 6th day of June, 1959, she saw Paul Froeschl, Jr., vice president and general manager of the respondent. In his testimony he admitted receiving the written claim for compensation on or about the 15th day of December, 1959, and explained the office papers filled out on claimant's injury in connection with workmen's compensation. He said the second employer's report of accident on the claimant was made out on the 6th day of June, 1959. On cross examination he testified:

"Q. Now, Mr. Froeschl, I believe you testified that when she came back in she asked to have papers filled out on a claim for compensation, is that right?

"A. That is right.

"Q. You understood at that time that she was attempting to make a claim for compensation, didn't you?

"A. Yes, sir."

The record also contains the testimony of Herman M. Swafford, an adjuster and attorney for the insurance carrier of the respondent, regarding conversations he had with the claimant on the 22nd day of June, 1959. He indicated they discussed a possible settlement of her case and in answer to a question said:

"The conversation, which I remember very well, with Mrs. Dexter was that I had advised her, in the presence of her husband, that we were not paying any compensation for any loss of time, that I told her following the receipt of the reporter's statement that I would call her by telephone, that I would then make an offer to her of a lump-sum settlement. . . ."

On the other hand, the claimant's husband who was present on the 22nd day of June, 1959, testified that he overheard Mr. Swafford say they would "try to settle—try to pay for 30 days or more, but he didn't know for sure how long."

The evidence all through the record discloses that the claimant injured her back, returned to work, and either aggravated or re-

injured her back. Reports were made, investigations were conducted and the employer and its insurance carrier knew the claimant was going to a chiropractor. The record indicates the employer and its insurance carrier, in fact, approved the treatment by Dr. Binkley, hoping to get this lady back in a position where they could compromise and settle her claim. She was repeatedly examined by other doctors, and there can be no contention by the respondent that it did not know the claimant was seeking compensation.

Upon the record here presented we think the trial court's ultimate finding—that the employer acquiesced in the claimant's treatment by Dr. Binkley—is equivalent to a finding that the respondent authorized the treatment by Dr. Binkley, and therefore supplied medical services for the claimant to and including the 26th day of June, 1959. Therefore, the formal written claim filed on the 15th day of December, 1959, was within time.

Viewing the over-all picture presented by the record, the respondent fully recognized an obligation to the claimant for medical aid as a result of the injuries she sustained in the course of her employment, but it attempted by various approaches to limit its obligation. This was not its privilege. This case closely resembles those in which the respondents have persuaded the claimants to take a course of action, and then seek to take advantage of the claimants' position. (See, *Wells v. Eagle-Picher M. & S. Co.*, 148 Kan. 794, 85 P. 2d 22; and *Johnson v. Skelly Oil Co.*, supra.)

The claimant herein contends this appeal is moot and should be dismissed.

The issue on this point was previously raised by the claimant (appellee) on a motion to dismiss, which was denied by the court on August 31, 1961, with leave to renew at the hearing on the merits. The motion recites the workmen's compensation commissioner awarded compensation and ordered payment of the amount due in the sum of $324.71 forthwith. The claimant served a written demand for payment of compensation pursuant to G. S. 1949, 44-512a. The demand was received by the respondent, but instead of making payment the respondent replied by stating that it was insured. Subsequently, the respondent and its insurance carrier appealed the commissioner's award to the district court, and it is recited in the motion that the claimant *filed an action* under 44-512a, *supra,* because of the respondent's failure to pay the compensation due within fourteen days. It is admitted by the parties that compensation has not been paid.

The mere fact that a claimant has the right to proceed *with a suit for lump sum judgment* does not bar the respondent from appealing an award of the commissioner. (*Bentley v. State Department of Social Welfare,* 187 Kan. 340, 356 P. 2d 791.)

The provisions of 44-512a, *supra,* give the claimant the right to sue for a lump sum judgment, upon the conditions prescribed, and if found to be entitled to a judgment, to receive such judgment and to collect on the same. However, at this point, no judgment has been obtained by the claimant for a lump sum. The mere fact that the claimant has the right to sue for a lump sum judgment cannot be held tantamount to the right to receive judgment or the right to receive payment on such judgment. Until the parties have had a right to litigate this question in the district court, the claimant does not have an absolute right to receive the award in a lump sum. Therefore, the claimant's motion in the Supreme Court to dismiss the appeal is premature to raise the issue which the claimant seeks to present, and the issues raised by the appeal are not moot.

For the most recent decisions touching upon the provisions of G. S. 1949, 44-512a, entitling a claimant to recover a lump sum judgment, see *Harris v. Moore Associates of Topeka,* No. 42,578, 188 Kan. 822, 365 P. 2d 1085; and *Teague v. George,* No. 42,549, 188 Kan. 809, 365 P. 2d 1087, decided this date.

The judgment of the trial court is affirmed.