No. 44,575

WANDA J. CHAPMAN, Widow and Natural Guardian of DEBRA J. CHAPMAN, Minor Dependent of John Lee Chapman, Deceased, *Appellant*, v. VICTORY SAND AND STONE COMPANY AND RELIANCE INSURANCE COMPANY, *Appellees*.

(416 P. 2d 754)

Opinion filed July 14, 1966.

*James L. Rose*, of Topeka, argued the cause, and *George E. McCullough*, *W. L. Parker, Jr.*, *Robert B. Wareheim* and *Reginald LaBunker*, of Topeka, were with him on the briefs for appellant.

*Herbert A. Marshall*, of Topeka, argued the cause, and *Doral H. Hawks*, *Gene McKinney* and *Wayne E. Hundley*, of Topeka, were with him on the briefs for appellees.

The opinion of the court was delivered by

FATZER, J.: In this case the district court denied an award of workmen's compensation and Wanda J. Chapman, widow and natural guardian of Debra J. Chapman, minor dependent of John Lee Chapman, the deceased workman, has appealed.

There is no dispute about the facts. The respondent, Victory Sand and Stone Company, is engaged in the business of selling river gravel, crushed rock and ready-mix concrete. Its property is located in northwest Topeka in an area between the Kansas River and the main line of the Rock Island Railroad near the Storey

Street exit from I-70 Highway, and its south property line is the north property line of the railroad. Prior to the construction of I-70, the entrance to the respondent's plant was at the foot of Waite Street which was vacated when I-70 was constructed. The state highway department built an access road approximately a block long, from the Storey Street exit to the entrance of the plant for the use of the respondent, its employees and customers, which is the only means of vehicular ingress and egress to the plant. The access road was constructed on the state's right of way and crosses five east-west railroad tracks. The north, or fifth, track is a switching track with a spur leading into respondent's plant to provide shipping facilities. In going to the plant from the Storey Street exit, a vehicle would proceed easterly, turn north, and cross the railroad tracks at a 45-degree angle into respondent's paved concrete yard—in other words, after it crossed the tracks it would be in respondent's yard. When the access road was built, Rock Island constructed a new crossing of heavy planks covered with asphalt, which it maintains.

In 1961 or 1962 the respondent erected an iron gate across the access road at a point approximately twenty feet south of the railroad tracks for the purpose of protecting its property from trespassers and because it was not practical to put it north of the tracks between the railroad right of way and the entrance to the plant. In addition, the respondent placed poles on each side of the gate so vehicles could not drive around it. The gate was locked each evening and on holidays and Sundays, and was opened on workday mornings by some responsible official of the company. Employees of the respondent arriving for work early were required to wait in their automobiles for the gate to be opened. When the gate was locked there was no way for a vehicle to proceed farther on the access road or across the railroad tracks onto the respondent's property.

On the day of the decedent's accident, there were twelve truck drivers employed by the respondent who made an average of ten or twelve trips per day to and from the plant and an average of eight or ten trains passed the crossing daily. Passenger trains coming from the west travel from 60 to 70 miles per hour, and the crossing was known to be hazardous. There were no mechanical signals at the crossing to warn of on-coming trains and there were no highway stop signs; the only sign was a standard "X" type railroad crossing sign installed by the railroad.

On the morning of April 1, 1964, John Chapman, an employee of the respondent, proceeded to work as usual in his own automobile. He drove from his home in Topeka and was to report for work at 8:00 a. m. Had he arrived at the respondent's plant, he would have parked his car, gone to the shop and either "signed in" or would have been signed in by the shop foreman, and his pay would have started. In going to the plant, he turned off Storey Street onto the access road, the gate was open, and he drove upon the railroad crossing a few minutes before his reporting time. When he reached the middle track, a few feet from the plant entrance, his car was struck by an eastbound passenger train and he was instantly killed.

Two days after the accident occurred, respondent obtained two octagonal highway stop signs and placed one south of the crossing and east of the access road, and the other north of the crossing on the respondent's property.

Based upon the foregoing, the examiner found the decedent's accident did not arise out of and in the course of his employment, and denied compensation. The director of workmen's compensation concurred in the findings of the examiner and found that:

". . . the claimant *was injured while on property not belonging to or under the dominion or control* of the respondent; that the accident occurred on a public railroad crossing over which a public road passed; that the fact that the respondent had erected a gate some distance away from the railroad tracks did not have the result of making said public road beyond the gate nor said railroad crossing *the property of the respondent;* that the accident occurred while claimant was on his way to work before he had entered on the premises of the respondent and that the cases cited in the examiner's findings are controlling that claimant has not sustained the burden of proving that he suffered an accidental injury arising out of and in the course of his employment . . ."

He further found:

". . . that the deceased's injuries and death were not the approximate cause of the respondent's negligence; that the respondent was not negligent."

On appeal, the district court adopted the findings of the director of workmen's compensation and entered judgment denying an award of compensation.

Seeking reversal, the claimant makes two contentions: First, that the decedent met with accidental injury after he entered upon property which was under the dominion and control of the respondent. However, she concedes the respondent owned neither the access road nor the railroad crossing and maintained neither.

Second, assuming, without conceding, the decedent had not entered upon the premises owned or controlled by respondent, he was subjected to a risk not shared by the public at large as a necessary incident to his employment, and the accident, which arose out of that risk, is deemed to have arisen out of and in the course of his employment, notwithstanding the fact he may not have arrived upon the premises owned or controlled by his employer. The latter test of compensability is referred to in claimant's brief as the "proximity" or "zone of danger" rule.

In advancing her contentions, the claimant candidly concedes Chapman was killed by a Rock Island train on its crossing while driving his own automobile upon a public highway, a few minutes prior to being engaged in any actual work connected with his employment, and that the granting or denial of compensation must be grounded upon an application of K. S. A. 44-508 ($k$) which reads:

"The words 'arising out of and in the course of employment' as used in this act shall not be construed to include injuries to the employee occurring while he is on his way to assume the duties of his employment or after leaving such duties, the proximate cause of which injury is not the employer's negligence."

In support of her first point, the claimant argues the respondent had taken the dominion and control over not only the railroad crossing, but the access road leading to and becoming a part of the crossing, making the road and the crossing a part of respondent's premises for purposes of applying the Workmen's Compensation Act; that neither the access road nor the railroad crossing would have been built except for the existence of the respondent's plant; that the road goes nowhere but to the respondent's property and is the only means of vehicular ingress and egress; that the respondent's plant was the sole reason the state built the access road and the railroad company constructed the crossing; that respondent took it upon itself to place a gate across the access road and it alone determined whether vehicles would be allowed to proceed upon the railroad crossing, and, further, that it built a "shoulder" on the access road to widen a curve and it cleaned up sand spilled from its trucks at the curve. Hence, it is urged that accidents occurring upon either the access road or the crossing should, under the rule of liberal construction of the Act, be chargeable to the respondent rather than to the employee. In making the contention, the claimant concedes the precise factual situation of this case has not previously been presented to the court and she cites and relies on *Kennedy v. Hull & Dillon Packing Co.*, 130 Kan. 191, 285 Pac. 536; *Kauffman v.*

*Co-operative Refinery Assn.*, 170 Kan. 325, 225 P. 2d 129, and *Teague v. Boeing Airplane Co.*, 181 Kan. 434, 312 P. 2d 220.

A review of the foregoing cases discloses they are not in point. In the *Kennedy* case a traveling salesman for a packinghouse was employed to solicit orders for goods and make collections from customers in an allotted territory, including several counties, and to travel over the territory in an automobile in the performance of his duties. While traveling over a public highway he came in contact with a high-voltage wire and was killed. It was held under the evidence that his death occurred within the allotted territory and in the course of his employment. In the *Kauffman* case the employee was on the employer's premises when he sustained an accidental injury. In the *Teague* case the employee parked her car in a parking area provided by the employer, which was fenced by and under its control and supervision, when she slipped and fell because of an icy condition.

The contention that the access road and the railroad crossing were an integral part of the respondent's premises over which it had assumed dominion and control is not well taken. While the gate across the access road was locked at night, on holidays, and Sundays, that fact had no bearing upon the decedent's right to proceed unhampered either upon the access road or upon the crossing the morning of his accident. The access road is a public highway over which the State Highway Commission has exclusive control, and the evidence was that the accident occurred on the railroad crossing which was not under the respondent's dominion and control. The decedent was not, as a matter of fact, under the respondent's control nor had its duties to him commenced. He was simply on his way to assume the duties of his employment at the time of his injury and death. (*Harrison v. Lozier-Broderick & Gordon*, 158 Kan. 129, 145 P. 2d 147; *Jones v. Lozier-Broderick & Gordon*, 160 Kan. 191, 160 P. 2d 932; *Murray v. Ludowici-Celadon Co.*, 181 Kan. 556, 560, 313 P. 2d 728; *Madison v. Key Work Clothes*, 182 Kan. 186, 318 P. 2d 991.) Neither was he using the highway in respondent's service when he was injured and the Act should not be construed to include injuries which clearly did not arise out of the employment. (K. S. A. 44-508 [k]; *Rush v. Empire Oil & Refining Co.*, 140 Kan. 198, 34 P. 2d 542.)

We conclude the district court's findings that the decedent's accident was one which occurred outside the hours of his employment, off the premises of the respondent, on a public road over which the

respondent had neither dominion nor control, and while he was on his way to assume the duties of his employment, are supported by substantial evidence.

The claimant next contends that when the decedent met his death he was subjected to a risk at a time and place necessarily incident to his employment and a risk not shared by the public. It is urged that when an employee enters into a zone of danger contemplated by his employment, he is deemed to have arrived at work; that the location of respondent's plant was at a place so situated as to make the only way of vehicular ingress and egress one of hazard; that the decedent could not, at the point of the accident, select his way and he had no other choice than to go over the railroad crossing to get to his work, and was in effect invited by the respondent to do so; that he was obligated to regularly and continuously negotiate the crossing as a necessary incident to his employment, resulting in a degree of exposure to a common risk beyond that to which the general public was subjected. It is further argued there is liability for the injury under consideration based upon the inferable fact that the hazard incident to crossing the railroad tracks, by reason of their location and proximity to the respondent's plant and because the access road provided the only vehicular ingress and egress thereto, must be held to have been within the contemplation of the parties at the time of the employment.

The respondent argues the decedent was not on its premises at the time of the accident; that he was not at that time engaged in any actual work connected with his employment but was on his way to assume his duties; that the train which hit his automobile was in no way under the control of the respondent nor was it engaged in any work for and on respondent's behalf, and it was under the control of the railroad company and running on its main line.

In applying the Workmen's Compensation Act, this court has given it a liberal construction so as to effectuate the real and genuine purpose and intent of the legislature. The statute here under consideration is simply a codification of the "going and coming" rule universally developed by courts in construing Workmen's Compensation Acts. It has been a part of our workmen's compensation law since 1917. (L. 1917, Ch. 226, Sec. 2.) It is a legislative declaration there is no causal relation between an injury and the business which employs another, that is, the injury does not arise out of the nature, conditions, obligations or incidents of the employment, while the employee is on his way to assume his duties or after leav-

ing his duties, which is not proximately caused by the employer's negligence. In the language of the statute, such an injury does not arise out of and in the course of the employment. While the statute does not define the place where the employee is "to assume the duties of his employment," our decisions are to the effect it is a place where an employee may reasonably be during the time he is doing what a person so employed may reasonably do during or while the employment is in progress. They require that the employee be engaged in some activity contemplated by and causally related to the employment. (*Sedlock v. Mining Co.*, 98 Kan. 680, 682, 159 Pac. 9; *Rush v. Empire Oil & Refining Co.*, supra; *Harrison v. Lozier-Broderick & Gordon*, supra; *Jones v. Lozier-Broderick & Gordon*, supra; *Murray v. Ludowici-Celadon Co.*, supra; *Madison v. Key Work Clothes*, supra.)

Recent cases involving an injury to an employee "off the premises" in which compensation was denied are *Murray v. Ludowici-Celadon Co.*, supra, and *Madison v. Key Work Clothes*, supra. In the *Madison* case the claimant was on her way to work by her usual and customary route, and slipped and fell on an icy sidewalk right at the door of the employer's property. It was urged the accident arose out of and in the course of employment where it occurred in close proximity to the place of work. In denying the contention, it was said:

"Textwriters and decisions of the courts of last resort in other jurisdictions have been cited extensively by the parties to this appeal, and some jurisdictions have expanded recovery in workmen's compensation cases to include injury received when an employee is 'going and coming,' if, in such a case, injury does not occur on the premises, but in close proximity to the place of work and on a road or other way intended and contemplated by the contract as being the exclusive means of access to the place of work. (*DeConstantin v. Pub. Serv. Commission*, 75 W. Va. 32, 83 S. E. 88, L. R. A. 1916A, 329; and *Hills v. Blair*, 182 Mich. 20, 148 N. W. 243.) Kansas, however, has not adopted this rule. . . ." (l. c. 191.)

Like the *Madison* case, the *Murray* case is directly in point with respect to the place where the claimant was injured. There the claimant, after having ceased work, was on his way home. He fell on ice and snow covering a public alley on both sides of which the respondent maintained a parking lot for its employees, and we were urged to adopt a rule followed in other jurisdictions to the effect that where the injured employee is "substantially" or "sufficiently" on the premises of the employer, the requirement of arising out of

and in the course of the employment would be satisfied. It was held the findings of the district court which denied an award of compensation were supported by substantial evidence, and the judgment denying compensation was affirmed. See, also, *Walker v. Tobin Construction Co.* 193 Kan. 701, 396 P. 2d 301.

The claimant's contention of inferable fact that the hazard incident to crossing the railroad tracks was within the contemplation of the parties at the time of the decedent's employment, is negated by the construction heretofore given the statute. However, we have carefully searched the record for evidence to establish that the parties actually contemplated the respondent's assumption of such hazard as a part of the contract of employment, and we find none.

Under the undisputed evidence, the decedent was on his way to assume the duties of his employment when he met his death, the proximate cause of which was not the respondent's negligence. As indicated, under those circumstances 44-508 ($k$) is a legislative declaration there is no causal relation between his injury and his employment, that is, his accident did not arise out of and in the course of his employment. We have considered all of the cases from other jurisdictions cited by the claimant. Some involve the construction of Workmen's Compensation Acts which do not contain a provision similar to 44-508 ($k$). It is sufficient to say none control the application of the statute here involved; hence, we adhere to our previous holdings in *Murray* and *Madison* rejecting the "proximity" or "zone of danger" rule here urged by the claimant. There being substantial evidence to support the findings of the director of workmen's compensation adopted by the district court, we affirm its judgment denying an award of compensation.

It is so ordered.