No. 31,347

Myrl Fairchild et al., *Appellees,* v. The Prairie Oil & Gas Company, *Appellant.*

(27 P. 2d 209.)

Opinion filed December 9, 1933.

*T. J. Flannelly,* of Independence, *W. H. Edmundson,* of Fredonia, and *Paul B. Mason,* of Tulsa, Okla., for the appellant.

*LeRoy Bradfield,* of Neodesha, for the appellees.

The opinion of the court was delivered by

Thiele, J.: This is an appeal from an award under the workmen's compensation act. The commissioner made an award denying compensation, and an appeal was taken to the district court, which awarded it.

As the appeal deals solely with the question of whether the injuries arose out of and in the course of the employment, the following must be detailed.

John Fairchild, husband of one plaintiff and father of the others, was employed by the appellant as a pumper on an oil and gas lease and had been so employed for eight years preceding his death. He was killed by the fall of a tree on December 7, 1931, under the following circumstances: Previous to the day in question L. S. Hyde and Charles S. Geary, with the consent of the landowner, but without permission of appellant, had cut a tree for firewood for their own use. On December 7 they were again on the premises to fell another tree for firewood for the same purpose. The tree was

a dead one and was about fifty feet in height. It stood on the north bank of a stream running east and west. To the northwest of the tree were oil tanks and to the west of the tanks was a power house. South of the power house a swinging bridge crossed the creek. Leading from the power house were shackle rods used to operate pumps, one of which rods crossed the creek about 115 feet west of the tree. Others crossed further to the west and oil lines also crossed the stream. The tree leaned to the south, and in cutting it a block and cable were attached to make it fall to the north so that it would not fall into the creek bed. While Mason and Geary were felling the tree, Fairchild came to where they were working and without their request assisted them with the cable. When the tree fell it shattered, and Fairchild was struck by pieces of the tree and died as a result. Fairchild was standing about fifty-eight feet from the stump of the tree when he was struck. During the time the tree was being felled, the pumps on the lease were being operated by Fairchild. As to the above there is little, if any, dispute. There was also testimony as to Fairchild's duties as a pumper. The appellant's foreman, Stephens, stated Fairchild was supposed to keep the shackle rods free from obstructions; that the tree was 116 feet from any property of the company, and that a man wouldn't be loyal if he didn't look after the company's property if anyone had gone on the lease to interfere with the machinery or other property, and that the pumper was expected to take care of the property under his control during working hours. The appellant's general superintendent, Smith, stated that Fairchild's duties were to take care of the power-house engines and other properties under the direction of Stephens; and that, in addition to the enumerated duties, he should preserve and protect the property, and that if anything unusual happened while he was there, in the absence of the witness and Stephens, he should use some judgment of his own. There was dispute as to whether, if the tree had fallen into the creek, in the event of high water it would have floated against the shackle rods or pipe lines. It may be remarked that the creek in question is said to be a sort of cut-off between the Verdigris river and Washington creek, and the direction of flow would depend to some extent on whether the water was higher in the creek than in the river or vice versa. As supporting the contention that Fairchild, in doing what he did, was protecting appellant's property, it was shown that Fairchild looked after the property generally; that when automobiles

and persons came on the lease he watched to see what the purpose was; that he had taken logs out of the creek, saying he didn't want them to wash down and break his oil lines in two; that the oil lines and shackle rods were not buried but suspended across the creek; that the creek in question frequently overflowed; then when the water in the creek rose he took the belts off the machinery; and that he had cut weeds along the creek banks. The district foreman of appellant testified that when these rivers (creeks) came out they always watched the river pretty closely; that the tree leaned south and if it had fallen into the stream it might have gone against the oil lines if the river (Verdigris) had backed up the creek. He also testified:

"Q. Is it any part of the duty of the pumper on the lease, or John Fairchild, on the lease in question, to watch the property against thieves and trespassers? A. It is naturally while he was on duty, and naturally I suppose it would come under his line of work. I won't say he was hired by us for that. I am not going to say that part of it.

"Q. We know that isn't his sole employment, of course, but he is supposed to watch and protect all the company's property while on the lease, is he not? A. If I was to see a man setting a tank afire—

"Q. Just answer my question. He is supposed to watch and protect the company's property? A. While he was on duty I would say he was."

The trial court, in deciding the case, called attention to a part of the evidence above mentioned, and said:

"I think it is common knowledge that when a large tree is felled it usually falls with a crash, and especially if it is dead tree, and the limbs fly in many directions, and it seems to me that Mr. Fairchild was in the line of his duty in assisting in seeing that this tree, not only did not fall in the creek, but that it did not injure the pipe lines or property of the company, when it fell, and either strike the lines or shackle rods, or throw limbs against them, so as to interfere with the workings of the plant.

"The distance from these lines, 114 feet, is small, and a large tree 60 or 70 feet in height, with the chance of dead limbs being scattered over the premises, certainly put the company's property in danger. And if the tree fell in the creek, the chance of logs or limbs being left, so that they might form an obstruction against the lines in case of high water, was a matter of concern to the man in charge of the property. There was certainly apparent danger to the property, and I have no doubt that the deceased, in the exercise of his best judgment, felt he was acting for the best interest of his company. I am, therefore, of the opinion that the death of the deceased was the result of an accident which arose out of and was in the course of his employment."

The trial court found that the death of John Fairchild was the result of an accident that arose out of and in the course of his

employment, and rendered judgment in favor of appellees and against the appellant.

The trial court having made his finding, our inquiry is limited to determining whether there was any evidence which, as a matter of law, supports the verdict.

In *Fair v. Golden Rule Refining Co.,* 134 Kan. 623, 7 P. 2d 70, it was said:

"Whether a finding or judgment of a trial court is sustained by sufficient evidence—that is, substantial, competent evidence—is a question of law, as distinct from a question of fact. When this question is presented to this court, it will examine the evidence solely for the purpose of determining that question." (p. 624.)

Reference in the above case is made to *Paul v. Skelly Oil Co.,* 134 Kan. 636, 7 P. 2d 73, wherein it was held:

"It is the responsibility of the district court, under the compensation act, to find the facts. The jurisdiction of this court is limited to questions of law and we can only examine the evidence for the purpose of determining whether there was substantial evidence to sustain the judgment of the district court. (*Orendoc v. Kaw Steel Construction Co.,* 131 Kan. 366, 291 Pac. 952; *Shay v. Hill,* 133 Kan. 157, 299 Pac. 263.)" (p. 638.)

No good purpose would be served by reiterating all of the testimony. An examination of the same shows that Fairchild was expected to look after the lease on which he was working; that he had during the period of his employment removed logs from the creek so that in event of flood they would not damage the property of his employer; that, while possibly remote, there was danger that the tree felled into the creek might drift against the pipe lines and shackle rods and cause damage or that it might shatter and hit the shackle rod 116 feet distant.

In *Bushing v. Iowa R. & L. Co.,* 208 Ia. 1010, 226 N. W. 719, a fireman left his usual place of work, apparently either to open or close windows which ventilated the boiler room, which windows were fifty feet from the boiler which the fireman attended and were opened and closed from a balcony or gallery which was ten or twelve feet above the boiler-room floor. On this balcony was a water heater. The fireman's body was found on the water heater. A test showed that the metal chain which opened and closed the windows had come in contact with a conduit which was charged with electricity. In discussing whether the accident arose out of and in the course of his employment, the court said:

"An injury occurs in the course of employment when it is within the period of the employment at a place where the employee reasonably may be in performing his duties, and while he is fulfilling those duties or engaged in doing something incidental thereto. *Southeastern Express Co. v. Edmondson,* 30 Ga. App. 697, 119 S. E. 39. See, also, *Granite Sand & Gravel Co. v. Willoughby,* 70 Ind. App. 112, 123 N. E. 194; *Fairbank Co. v. Industrial Commission,* 285 Ill. 11, 120 N. E. 457; *Bryant v. Fissell,* 84 N. J. Law 72, 86 Atl. 458; *New Amsterdam Gas Co. v. Sumrell,* 30 Ga. App. 682, 118 S. E. 786. · An injury in the course of employment embraces all injuries received while employed in furthering the employer's business and injuries received on the employer's premises, provided that the employee's presence must ordinarily be required at the place of the injury, or, if not so required, employee's departure from the usual place of employment must not amount to an abandonment of employment or be an act wholly foreign to his usual work. *Shoffler v. Lehigh Valley Coal Co.,* 290 Pa. St. 480 (139 Atl. 192); *Von Ette's Case,* 223 Mass. 56 (111 N. E. 696). An employee does not cease to be in the course of his employment merely because he is not actually engaged in doing some specifically prescribed task, if, in the course of his employment, he does some act which he deems necessary for the benefit or interest of his employer. *Associated Employers' Reciprocal v. State Ind. Com.,* 82 Okla. 229 (200 P. 174); *McCrary v. Wolff,* 109 Neb. 796 (192 N. W. 237).

"The evidence in this case is ample to show that Bushing's presence on the gallery was not in violation of any rules of the employer, and that if he had desired to open or close the windows, it was his privilege to do so. An accident to an employee may arise in the course of his employment, although he is not actually working at the time of the injury. *Holland-St. Louis Sugar Co. v. Shraluka,* 64 Ind. App. 545 (116 N. E. 330). There is nothing in the record which would tend to show that Bushing intended to abandon his employment, or that his presence on the gallery was for purposes other than those for which he may rightfully have gone there. We must hold then that the injury, whatever its cause, occurred in the course of his employment." (p. 1018.)

While perhaps Fairchild was overcautious in assisting Hyde and Geary in felling the tree so that it would not damage his employer's property, it cannot be said there was no causal connection between his employment and his injury, and neither can it be said that in assisting them he went entirely outside of his employment and became a mere volunteer. This case can be readily distinguished from *Sellers v. Reice Construction Co.,* 124 Kan. 550, 262 Pac. 19, relied on by appellant. In that case the injured person, at his own suggestion, attempted to move the foreman's automobile to accommodate persons other than employees of his employer, and while moving the automobile was struck by a train and killed. It was held that the employer was not concerned about how the foreman

came to work or where he left his automobile, nor about the truck loaded with timbers, nor whether they struck the foreman's automobile, and that these matters had no connection with Seller's employment. In this case, however, we have an employee hired to look after the lease and to protect the same, and who in times past had done in varying degree just what he was doing when he was killed. Whether he was overcautious and too apprehensive about possible danger to his employer's property makes no difference unless it can be said there was no causal connection between his employment and the accident. Both appellant and appellees cite many decisions discussing the meaning of the phrase "arising out of and in the course of employment," but it is not necessary that each be mentioned, for their application to this case is not close owing to the difference in the facts, and no good purpose would be served in pointing out such differences. We are satisfied in this case that the injury was sustained by the decedent in a manner arising out of and in the course of his employment.

The judgment of the lower court is affirmed.

HUTCHISON, J., not sitting.