No. 79,680

THE ESTATE OF GARY E. SOUPENE, BY AND THROUGH THE ADMINISTRATORS, DAVID SOUPENE, JAMES E. SOUPENE, AND THELMA J. SOUPENE, *Appellants,* v. ROBERT A. LIGNITZ, *Appellee.*

(960 P.2d 205)

Opinion filed May 29, 1998.

*Elizabeth R. Herbert*, of Irigonegaray & Associates, of Topeka, was on the brief for appellant.

*George F. Farrell, Jr.*, of Topeka, was on the brief for appellee.

The opinion of the court was delivered by

LARSON, J.: While responding to a fire call, Riley County volunteer firefighter Gary Soupene was killed when his vehicle collided with that of another volunteer firefighter, Robert Lignitz. Soupene's estate and heirs brought a damage action against Lignitz. The trial court granted Lignitz' motion for summary judgment because both Soupene and Lignitz were covered by the Kansas Workers Compensation Act (Act) at the time the accident occurred and suits between co-employees are prohibited by K.S.A. 44-501(b). We have jurisdiction of the Soupenes' appeal under K.S.A. 20-3018(c).

This appeal involves the application of the "going and coming rule" of K.S.A. 44-508(f). If the volunteer firefighters were excluded from coverage of the Act by this provision, the suit may be maintained. If they were covered by the Act, the suit is precluded.

*Factual Statement*

There is no disagreement as to the facts, which the trial court summarized as follows:

At the time of the accident, both Soupene and Lignitz were volunteer firefighters for the Riley County Fire District #1 and were responding to a fire call. The accident occurred when Soupene was turning into a driveway to pick up another volunteer firefighter.

Most volunteer firefighters in the Fire District carried pagers to notify them when a fire had been reported in the district. Upon receiving notice of a fire, a firefighter was expected to respond to a call by proceeding to the station in Zeandale, Kansas, or directly to the fire location if known by the firefighter.

Volunteer firefighters of the Fire District are covered under the provisions of the Act for injuries or death by accident arising out of and in the course of their employment.

Soupene's estate executed a release to the Board of Commissioners of Riley County, Kansas, of all claims or benefits which may have accrued under the provisions of the Act in exchange for the sum of $3,300.

Lignitz' motion for summary judgment claimed both he and Soupene were in the course of their employment as volunteer firefighters at the time of the accident and the "going and coming rule," set forth in K.S.A. 44-508(f), did not apply. This rule excludes from coverage under the Act those injuries occurring while an employee is on the way to assume duties of employment or after leaving such duties. Lignitz also asserted a subsequent legislative amendment to K.S.A. 44-508(f), L. 1996, ch. 79, § 3, which exempts providers of emergency services responding to an emergency from the going and coming rule, merely clarified existing law.

The Soupenes argued the 1996 amendment actually modified the Act so as to start covering volunteer firefighters on their way to the station who previously were not covered under the Act. They further claim that traveling on a public roadway while responding to a fire is not an integral or necessary part of a volunteer firefighter's employment and should not constitute an exception to the going and coming rule of K.S.A. 44-508(f).

In granting Lignitz' motion for summary judgment, the trial court noted that in responding to a fire call, there is a special degree of inconvenience and urgency inherent in the position of a volunteer firefighter which is part of the service for which the worker is employed. The court held that in order to avoid conceptual difficulties in determining when volunteer firefighters have "arrived" at their place of employment, volunteer firefighters must be deemed to begin their employment when an emergency call is received and they begin to respond. Finally, the court concluded that the 1996 amendment to K.S.A. 44-508(f) merely clarified the law existing at the time of the accident and corresponded to the court's own analysis.

*Analysis*

The questions involved in this case are those of statutory construction, which are questions of law over which we have unlimited review. *In re Tax Appeal of Boeing Co.*, 261 Kan. 508, Syl. ¶ 1, 930 P.2d 1366 (1997).

We recently stated:

"We initially note our fundamental rule of construction that it is the intent of the legislature, where it can be ascertained, which governs the construction of a statute. See *City of Wichita v. 200 South Broadway*, 253 Kan. 434, 436, 855 P.2d 956 (1993). The legislature is presumed to have expressed its intent through the language of the statutory scheme it enacted. We will not read into legislation provisions which do not there exist. See *Joe Self Chevrolet, Inc. v. Board of Sedgwick County Comm'rs*, 247 Kan. 625, 633, 802 P.2d 1231 (1990)." *Marais des Cygnes Valley Teachers' Ass'n. v. U.S.D. No 456*, 264 Kan. 247, 954 P.2d 1096 (1998).

Although appellate courts will not speculate as to the legislative intent of a plain and unambiguous statute, *State v. Lawson*, 261 Kan. 964, 966, 933 P.2d 684 (1997), where the construction of a statute on its face is uncertain, the court may examine the historical background of the enactment, the circumstances attending its passage, the purpose to be accomplished, and the effect the statute may have under various suggested interpretations. *Brown v. U.S.D. No. 333*, 261 Kan. 134, 142, 928 P.2d 57 (1996).

"Ordinarily, there is a presumption that a change in the language of a statute results from the legislative purpose to change its effect, but this presumption may be strong or weak according to the circumstances, and may be wanting altogether in a particular case." *Board of Education of U.S.D. 512 v. Vic Regnier Builders, Inc.*, 231 Kan. 731, 736, 648 P.2d 1143 (1982). However, we have also stated: "Ordinarily, courts presume that, by changing the language of a statute, the legislature intends *either to clarify its meaning* or to change its effect." (Emphasis added.) *Watkins v. Hartsock*, 245 Kan. 756, 759, 783 P.2d 1293 (1989) (citing *U.S.D. 512*, 231 Kan. at 731). The authors of 82 C.J.S., Statutes § 384(a), p. 897 noted: "It is presumed that an amendment is made to effect some purpose, which may be either to alter the operation and effect of earlier provisions or to clarify the meaning thereof."

K.S.A. 44-501 of the Workers Compensation Act begins:

"(a) If in any employment to which the workers compensation act applies, personal injury by accident arising out of and in the course of employment is caused to an employee, the employer shall be liable to pay compensation to the employee in accordance with the provisions of the workers compensation act. . . .

"(b) Except as provided in the workers compensation act, no employer, or other employee of such employer, shall be liable for any injury for which compensation is recoverable under the workers compensation act . . . .

. . . .

"(g) It is the intent of the legislature that the workers compensation act shall be liberally construed for the purpose of bringing employers and employees within the provisions of the act to provide the protections of the workers compensation act to both. . . ."

K.S.A. 44-508(b) defines "employee" to include

"persons serving on a volunteer basis as duly authorized law enforcement officers, ambulance attendants, mobile intensive care technicians, [or] firefighters, but only to the extent and during such periods as they are so serving in such capacities."

The applicability of the Act to the Fire District is established through the provisions of K.S.A. 44-505(a)(4) and K.S.A. 44-505d and the stipulation of the parties that the Fire District had made no election excepting it from coverage under the Act.

K.S.A. 44-508(f) excludes certain injuries from the Act. Prior to an amendment in 1996, the statute provided:

"The words 'arising out of and in the course of employment' as used in the workers compensation act shall not be construed to include injuries to the employee occurring while the employee is on the way to assume the duties of employment or after leaving such duties, the proximate cause of which injury is not the employer's negligence."

In 1996, subsequent to the accident, the legislature amended K.S.A. 44-508(f) to add the following language:

"An employee shall not be construed as being on the way to assume the duties of employment, if the employee is a provider of emergency services responding to an emergency." L. 1996, ch. 79, § 3.

The Soupenes emphasize this change in the language of K.S.A. 44-508(f) and vehemently argue that Lignitz has failed to produce evidence rebutting the presumption of statutory construction that a change in the wording of a statute implies a change in the law. Actually, there is no burden to produce "evidence" to rebut the effect of a legal presumption regarding a matter of statutory construction; rather, sound legal analysis of the statute at issue and its historical background may be sufficient to defeat the presumption.

Although a presumption exists that a change in the language of a statute may indicate a change in the law, our appellate courts have often held that a change in the law merely reflects the legislature's attempt to clarify the law. See, *e.g.*, *Williams v. Kansas Dept. of SRS*, 258 Kan. 161, 174, 899 P.2d 452 (1995); *Finstad v. Washburn University*, 252 Kan. 465, 473, 845 P.2d 685 (1993); and *Lee v. Boeing Co.*, 21 Kan. App. 2d 365, 371, 899 P.2d 516 (1995).

In addition, 82 C.J.S., Statutes § 384(a), pp. 899-900 provides:

"An amendment to an act may be resorted to for the discovery of the legislative intention in the enactment amended, as where the act amended is ambiguous. An amendment which in effect construes and clarifies a prior statute must be accepted as the legislative declaration of the meaning of the original act . . . ."

In § 384(b)(2), pp. 906-07, the authors proceed to state:

"While a radical change in the phraseology of the statute amended is generally to be regarded as a legislative declaration that the law so amended did not as originally framed embrace the amended provision, an amendment making a statute directly applicable to a particular case is not a conclusive admission by the legislature that the statute did not originally cover such a case . . . ."

The matter before us in the present case is one of first impression. There is no indication that the legislature enacted the amendment to K.S.A. 44-508(f) in order to change an existing judicial interpretation of the statute. Therefore, we first determine if the going and coming rule applied to volunteer firefighters responding to an emergency prior to the amendment so as to exclude such volunteers from coverage under the Act. In making this determination, we bear in mind the legislature has subsequently amended the Act to clearly state coverage exists under the Act for volunteer firefighters responding to an emergency.

When considering whether the going and coming rule, applied to the facts of the present case, bars or allows coverage under the Act, it is helpful to first examine what has been said on this subject in 1 Larson's Workers' Compensation Law (1997). In considering the meaning of "course of employment," § 14.00 provides: "An injury is said to arise in the course of the employment when it takes place within the period of the employment, at a place where the

employee reasonably may be, and while the employee is fulfilling work duties or engaged in doing something incidental thereto." Section 15.00 goes on to state:

"As to employees having fixed hours and place of work, injuries occurring on the premises while they are going to and from work before or after working hours or at lunchtime are compensable, but if the injury occurs off the premises, it is not compensable, subject to several exceptions. Underlying some of these exceptions is the principle that course of employment should extend to any injury which occurred at a point where the employee was within range of dangers associated with the employment."

Next, § 16.00 describes one of the exceptions to the general going and coming rule to be the following:

"The rule excluding off-premises injuries during the journey to and from work does not apply if the making of that journey, or the special degree of inconvenience or urgency under which it is made, whether or not separately compensated for, is in itself a substantial part of the service for which the worker is employed."

Section 16.04 provides:

"Several so-called 'exceptions' to the basic premises rule on going and coming are applications of this principle: employees sent on special errands; employees continuously on call; and employees who are paid for their time while traveling or for their transportation expenses. The explanation of these exceptions, and the clue to their proper limits, is found in the principle that the journey is an inherent part of the service."

Section 16.15 adds to the previous exception: "The element of urgency may supply the necessary factor converting a trip into a special errand." Section 16.16 brings employees who are on call into the exception when responding to an errand pursuant to a call. Section 16.17 discusses how police officers are brought within the general on-call rule, but goes on to note that sometimes police officers are granted coverage even in the course of an ordinary going and coming journey.

In Kansas, we have recognized an exception to the general going and coming rule which applies when travel upon the public roadways is an integral or necessary part of the employment. *Kindel v. Ferco Rental, Inc.*, 258 Kan. 272, 277, 899 P.2d 1058 (1995). In *Kindel*, we decided that an accident which occurred in a company vehicle transporting construction workers to a remote job site fell

within this exception, even though the employees had stopped at a bar on the way home.

The decision in *Kindel* relied in part upon *Angleton v. Starkan, Inc.*, 250 Kan. 711, 828 P.2d 933 (1992). In *Angleton,* we granted coverage under the Act to the driver of a cattle truck who was killed after being lured to the side of the road by hijackers who invited him to smoke marijuana with them.

In both of these cases, we determined that the injuries for which recovery was sought arose out of and in the course of the employment. We have stated:

"The two phrases arising 'out of' and 'in the course of' employment, as used in our Workers Compensation Act, K.S.A. 44-501 *et seq.,* have separate and distinct meanings; they are conjunctive, and each condition must exist before compensation is allowable. The phrase 'out of' employment points to the cause or origin of the accident and requires some causal connection between the accidental injury and the employment. An injury arises 'out of' employment when there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury. Thus, an injury arises 'out of' employment if it arises out of the nature, conditions, obligations, and incidents of the employment. The phrase 'in the course of' employment relates to the time, place, and circumstances under which the accident occurred and means the injury happened while the worker was at work in the employer's service. [Citations omitted.]" *Kindel,* 258 Kan. at 278.

Our Kansas case most on point and primarily relied upon by the trial court is *Messenger v. Sage Drilling Co.,* 9 Kan. App. 2d 435, 680 P.2d 556, *rev. denied* 235 Kan. 1042 (1984). There, the Court of Appeals decided that an employee's death in a truck accident which occurred while he was on the way home from a distant oil and gas drilling site was covered under the Act. Citing *Bell v. Allison Drilling Co.,* 175 Kan. 441, 264 P.2d 1069 (1953), and *Newman v. Bennett,* 212 Kan. 562, 512 P.2d 497 (1973), the Court of Appeals found travel to and from distant drilling sites was an integral and necessary part of the employment which benefitted the employer. 9 Kan. App. 2d at 440. The *Messenger* court quoted *Chapman v. Victory Sand & Stone Co.,* 197 Kan. 377, 382-83, 416 P.2d 754 (1966):

"'While the statute does not define the place where the employee is "to assume the duties of employment," our decisions are to the effect it is a place where an employee may reasonably be during the time he is doing what a person so employed may reasonably do during or while the employment is in progress. They require that the employee be engaged in some activity contemplated by and causally related to the employment. [Citations omitted.]' " 9 Kan. App. 2d at 436.

Responding to emergency calls is an integral and necessary part of a volunteer firefighter's duties, which entails a special degree of inconvenience and urgency. When an emergency call is received, volunteer firefighters are expected to report either to the fire station or to the site of the fire. Volunteer firefighters have no set hours of employment, but rather are on call and assume the duties of their employment when they receive an emergency call and begin to respond.

Responding to an emergency call is an activity contemplated by and causally related to the employment of a volunteer firefighter. In addition, an accident which occurs while responding to such an emergency both arises out of and is in the course of the employment. Soupene's accident arose out of the nature, obligations, and incidents of his employment, as he was required to proceed to the fire station or the location of the fire after receiving an emergency call. There is a rational causal connection between the accident and the conditions under which he was required to perform his duties. Furthermore, the accident occurred in the course of Soupene's employment, as he had assumed the duties related to his employment when he began responding to the emergency call.

This result corresponds with that of *DeLong v. Miller*, 285 Pa. Super. 120, 426 A.2d 1171 (1981), where the Superior Court of Pennsylvania held that the defendant, who was driving his car to the fire house in response to a fire alarm when he struck the plaintiff, who was directing traffic near the fire house, was acting in the course of his employment and was therefore immune from suit. The court stated:

"[O]ur cases have held that volunteer firemen injured en route while responding to an alarm are entitled to compensation under the Act. [Citations omitted.] These cases recognize that because the unique character of the employment requires prompt reaction to an alarm, a volunteer fireman is in the course of his employment when he leaves his home in response to an alarm." 285 Pa. Super. at 123.

See also *Le Febvre v. Workmen's Comp. App. Bd.*, 69 Cal. 2d 386, 388, 71 Cal. Rptr. 703, 445 P.2d 319 (1968), which held:

"As a volunteer fireman whose duties were to respond to calls to fight fires at any location within the entire district and to attend evening drills and meetings twice each month at such locations as might be designated from time to time, Le Febvre's employment cannot be viewed as having a regular headquarters or office where he was regularly required to report in order to perform his duties or before setting out on his assigned tasks. Instead, from the moment he left his home, or any other point from which he might have been summoned, to engage in firefighting or in training drills in the district, he was acting within the scope of his employment by the volunteer fire department. Accordingly, the fact that he met his death while traveling on the public highway en route to an evening drill does not bring the going and coming rule into play. The travel was plainly required by the employment, the travel risk was incident to the employment, and Le Febvre's death is compensable. [Citations omitted.]"

Had we had the opportunity to rule prior to the legislative amendment to K.S.A. 44-508(f), we would have determined the going and coming rule did not apply to volunteer firefighters responding to an emergency. As such, the legislative amendment is only a clarification of a possible ambiguity in the law, and the presumption that the legislature intended to change the law by enacting the amendment does not apply.

Furthermore, the legislative history of the 1996 amendment supports our determination that the amendment was meant to merely clarify the law. It is clear that the amendment was proposed in response to the factual situation underlying this case. Patrick Collins, Fire Chief of Riley County Fire District #1, stated the Riley County Counselor had opined that Soupene was not an employee because he had not reached his place of employment. Chief Collins was not in agreement and stated in part: "These valiant individuals respond from wherever they happen to be; whether they are in bed asleep, just arriving home from work or even responding from their jobs that provides their livelihood. . . . In actuality their response began when the volunteers left their work, home or family." Minutes of the House Business, Commerce, and Labor Committee, March 13, 1996, attachment 4. See Testimony of Patrick Collins, Minutes of the Senate Committee on Commerce, February 13, 1996.

In a report to the House Business, Commerce, and Labor Committee, the Workers Compensation Advisory Council stated: *"[T]he statute should be amended to clarify that volunteer firefighters would be covered by the Workers Compensation Act when responding to a fire alarm."* Report to the House Business, Commerce, and Labor Committee, March 12, 1996.

The legislative history makes it clear that while the present case sparked the controversy, volunteer firefighters responding to an emergency thought they were covered by the Act and wanted specific legislative wording to confirm this belief. Even though no judicial decision was ever rendered to confirm or reject such a position, volunteer firefighters quickly mobilized to seek enactment of legislation which would confirm their coverage under the Act when responding to an emergency. As such, the 1996 amendment to K.S.A. 44-508(f) merely clarified existing law and did not change it.

The well-written and reasoned decision of the trial court is affirmed.