(90 P.3d 359)

No. 91,065

HOWARD H. TATE (Deceased), *Appellant,* v. CITY OF JUNCTION CITY, and KANSAS EASTERN REGION INS., TRUST, *Appellees.*

—

Opinion filed May 21, 2004.

*Scott J. Mann,* of Mann Law Offices, of Hutchinson, for appellant.

*Frederic J. Greenbaum* and *Robert J. Wonnell,* of McAnany, Van Cleave & Phillips, P.A., of Kansas City, for appellees.

Before MARQUARDT, P.J., PIERRON and GREEN, JJ.

GREEN, J.: This appeal arises from a decision of the Workers Compensation Board (Board) to deny death benefits to Barbara Tate, the surviving spouse of Howard Tate. Howard was killed in a single-car accident on his way to work overtime for the City of Junction City (City). The Board determined that because Howard was killed on his way to assume the duties of employment, Howard's death did not occur in the course of employment.

The single question on appeal is whether the facts of this case fall within an exception to the general rule that injuries incurred while the employee is on the way to assume the duties of employment are not covered under the Workers Compensation Act (Act), K.S.A. 44-501 *et seq.* Barbara cites two recognized exceptions to this rule: (1) When the employee is an emergency services provider and is responding to an emergency and (2) when the employee's journey, or the special degree of inconvenience or urgency under which it is made, whether or not separately compensated for, is in itself a substantial part of the service for which the worker is employed. Under the facts of this case, we find that neither exception applies. As a result, the Board was correct in its determination that Howard's death did not occur in the course of employment and in denying workers compensation benefits. Accordingly, we affirm the Board's decision.

*Facts*

Howard died on Saturday, February 9, 2002, while he was on his way to work for the City. Howard and Barbara lived in White City, which is approximately 24 miles from Junction City. Howard's normal employment hours were Monday through Friday, 7:30 a.m. to 4:30 p.m. He worked as an equipment operator II in the street department and performed general maintenance tasks to keep the streets functional. Some of the "essential duties and responsibilities" of his job included repairing streets and pavement, trimming trees, clearing storm drains, changing out traffic light bulbs, and *operating a snowplow to clean the streets during snow and ice storms.*

Barbara testified that when Howard arrived home on Friday, February 8, 2002, he said he needed to stay around the house because they were expecting a front and he was on call for Saturday. Nevertheless, Ray Ibarra, director of public works for the City, testified that there was no such thing as "on call" and that overtime work was done on a voluntary basis. He further testified that when there was a storm moving into the area, the employees were told to be around if they wanted some overtime. Ibarra stated the employees would not be disciplined if they chose to be unavailable for overtime work. Erle Bergstrom, street foreman for the City, testified that the employees were not required to perform overtime work but that "ordinarily everybody always came in" because they wanted the overtime.

On Saturday, February 9, 2002, Bergstrom noticed that it had started snowing and attempted to call Howard, along with four other employees, to come into work. Howard and Barbara did not have a telephone during this time, and the City would call Nancy and Bobby Clemons if they needed to contact Howard. When Bergstrom attempted to contact the Clemons, the telephone line was busy. Bergstrom went outside to get his truck going and told his wife, Phyllis, to continue calling. Phyllis eventually spoke with Nancy and asked her to leave a message for Howard to see if he could come into work.

Nancy testified that she went across the street to Howard's house and told him, "Howard, your work called and they wanted to know if you wanted to come into work." She further testified that Howard said he was going to stick around and get a cup of coffee before he left. Different from Nancy's testimony, Barbara said that Nancy came over and said, "Guess what, you just got called in." At the time, she and Howard were drinking coffee and he said that he was going to finish his coffee before he left for work.

Howard left his house at approximately 3 p.m. on Saturday but never reported to work. Ibarra testified that Howard would have reported to the City's public works department, at which time he would have been assigned the roads he was supposed to clear. It was later discovered that Howard had been traveling on Highway 77 when his car slid off the road and into a ditch that contained

water. Howard's body was discovered in the water outside of his car. The autopsy report indicated that Howard had struck his head, had been thrown from the car, and had died by drowning. Officer Nate Sparks determined that sleet and snow had contributed to Howard's accident. Sparks testified that he recovered from Howard's clothing a snow route map of the city streets. After finding this list and speaking with Phyllis and some of Howard's coworkers, Sparks concluded that Howard was on his way to work when he was involved in the accident.

After Howard's death, an action for death benefits for Barbara was initiated under the Act. The City contested the claim and argued that Howard's injury did not arise out of or occur within the scope of employment. The City pointed to the "going and coming rule" which, as a general rule, excludes commuting workers from receiving workers compensation benefits for injuries that were sustained while in transit to their place of employment. On the other hand, Barbara argued that Howard's injuries were compensable as his trip to work fell within an exception to the going and coming rule, as recognized by our Supreme Court in *Estate of Soupene v. Lignitz*, 265 Kan. 217, 960 P.2d 205 (1998). Barbara asserted that Howard's trip was made under a special degree of inconvenience or urgency and was a substantial part of his employment and, therefore, was excepted from the going and coming rule. The administrative law judge (ALJ), after considering the *Soupene* case, determined that Howard's accident arose out of and in the course of his employment. As a result, the ALJ awarded workers compensation death benefits to Barbara.

The City appealed this award to the Board. On appeal, the Board looked at the emergency services exception of K.S.A. 44-508(f). This exception essentially provides that an employee who is a provider of emergency services and is responding to an emergency is excepted from the going and coming rule. The Board also looked at *Soupene*, where a volunteer firefighter was killed in a car accident while responding to a fire call. In that case, our Supreme Court determined that the going and coming rule did not apply to volunteer firefighters responding to an emergency. 265 Kan. at 226-27. The Board determined that Howard's death did not fit the

emergency services exception. The Board determined that unlike firefighters, policemen, and ambulance drivers, Howard's employment did not fit the emergency services exception.

The Board concluded that because Howard was killed on his way to assume the duties of his employment, Howard's death did not occur in the course of his employment. Accordingly, the Board denied death benefits to Barbara and reversed the ALJ's decision.

## Standard of Review

Barbara contends that the Board erred in denying death benefits to her under the Act. She argues that Howard's trip to work came within two recognized exceptions to the general rule that injuries incurred while the employee is on the way to assume the duties of employment are not covered under the Act. Barbara cites to (1) the emergency services exception of K.S.A. 44-508(f) and (2) the "journey as a substantial part of the service" exception recognized by our Supreme Court in *Soupene*, 265 Kan. 217, Syl. ¶¶ 1, 3.

Our Supreme Court in *Kindel v. Ferco Rental, Inc.*, 258 Kan. 272, 277, 899 P.2d 1058 (1995), set forth the appropriate standard of review of the Board's decisions:

"Review of the Board's decision is now by the appellate courts in accordance with the Act for Judicial Review and Civil Enforcement of Agency Actions, K.S.A. 77-601 *et seq*. See L. 1995, ch. 1, [sec.] 3.

"Under K.S.A. 77-621, appellate review is explicitly limited to questions of law. That statute states, in relevant part:

'(c) The court shall grant relief only if it determines any one or more of the following:

. . . .

(4) the agency has erroneously interpreted or applied the law;

. . . .

(7) the agency action is based on a determination of fact, made or implied by the agency, that is not supported by evidence that is substantial when viewed in light of the record as a whole . . . ; or

(8) the agency action is otherwise unreasonable, arbitrary or capricious.' "

In this case, we must determine whether the Board's factual findings were supported by substantial competent evidence and whether the Board erred in its determination that the exceptions to the going and coming rule did not apply to the facts of this case.

"Although this court may substitute its judgment for that of the Board on questions of law, on disputed issues of fact an appellate court must view the evidence in the light most favorable to the prevailing party and determine if there is substantial competent evidence to support the Board's determinations." *Brobst v. Brighten Place North,* 24 Kan. App. 2d 766, 770, 955 P.2d 1315 (1997).

Substantial evidence in workers compensation cases is evidence that possesses something of substance and relevant consequence and carries with it fitness to induce the conclusion that the award is proper, or furnishes a substantial basis of fact from which the issue raised can be reasonably resolved. The appellate court reviews the evidence in the light most favorable to the prevailing party and does not reweigh the evidence or assess the credibility of the witnesses. *Mudd v. Neosho Memorial Regional Med. Center,* 275 Kan. 187, 191-92, 62 P.3d 236 (2003).

"The Kansas Workers Compensation Act, K.S.A. 44-501 *et seq.,* is to be liberally construed for the purpose of bringing employers and employees within its provisions to provide protection of the Act to both. [K.S.A. 44-501(g)]." *Graff v. Trans World Airlines,* 267 Kan. 854, Syl. ¶ 1, 983 P.2d 258 (1999). "In proceedings under the workers compensation act, the burden of proof shall be on the claimant to establish the claimant's right to an award of compensation and to prove the various conditions on which the claimant's right depends." K.S.A. 44-501(a).

*Going and Coming Rule*

The relevant portion of K.S.A. 44-508(f) sets forth the going and coming rule as follows:

"The words 'arising out of and in the course of employment' as used in the workers compensation act shall not be construed to include injuries to the employee occurring while the employee is on the way to assume the duties of employment or after leaving such duties, the proximate cause of which injury is not the employer's negligence."

Consequently, an employee will be denied compensation under the Act if his or her injuries come within this general rule. The rationale behind the going and coming rule is that " 'the injury does not arise out of the nature, conditions, obligations or incidents of the employment, while the employee is on his way to assume his duties

or after leaving his duties, which is not proximately caused by the employer's negligence.'" *Messenger v. Sage Drilling Co.*, 9 Kan. App. 2d 435, 436, 680 P.2d 556, *rev. denied* 235 Kan. 1042 (1984).

*Emergency Services Exception*

The emergency services exception to the going and coming rule states: "An employee shall not be construed as being on the way to assume the duties of employment, if the employee is a provider of emergency services responding to an emergency." K.S.A. 44-508(f).

Barbara contends that Howard's death came within this exception as he was killed while responding to an urgent call from the street department to clear snow from the streets. She asserts that street department employees, such as Howard, have no set hours with respect to clearing snow and assume the duties of employment when they respond to the call to come in and work.

Barbara attempts to characterize Howard's employment as that of an emergency services provider. The evidence, however, does not support such a conclusion. Howard was employed as an equipment operator II for the City. Although one of his job responsibilities was to clear snow from the city streets during snowstorms, Howard had other job responsibilities. Some of his other job tasks included operating a grader and backhoe, driving trucks of various sizes, and performing routine inspections and maintenance on equipment. Howard's regular work hours were from 7:30 a.m. to 4:30 p.m., Monday through Friday.

Although the street department employees were expected to clear snow during regular working hours, they were not required or expected to come into work on their days off. Both Ibarra's and Bergstrom's testimonies indicated that clearing snow off the city streets outside of regular working hours was done on a voluntary basis. Although Barbara testified that Howard stated he was on call for that Saturday, Ibarra testified that there was no such thing as on call. In addition, Ibarra's testimony revealed that Howard was not required to be in a place where he could be reached for overtime work. When Howard was contacted on the Saturday in ques-

tion, he was not ordered into work. Rather, Phyllis left a message asking if Howard could come in and help clear snow.

The Board determined that unlike policemen, firefighters, and ambulance drivers, Howard's employment did not fit within the emergency services exception. The Board listed the following reasons for its decision. First, responding to emergency calls was not an integral and necessary part of Howard's job. Second, Howard's job "did not entail a special degree of inconvenience and urgency." Third, there was not a sense of urgency when Howard responded to the request for overtime as he did not leave immediately. Fourth, the evidence failed to show that Howard had to drive at a fast speed or use emergency lights to get to the overtime work. Fifth, Howard was not required or expected to work overtime. Sixth, the acceptance of overtime was completely voluntary. Seventh, Howard was not on call and was not expected or requested to be at a place where he could receive the overtime call. Finally, Howard was not paid until he reported to his supervisor at his place of employment for the City.

The Board did not err in its determination that Howard's employment did not fit within the emergency services exception. The evidence in this case simply did not establish that Howard was an emergency services provider within the meaning of K.S.A. 44-508(f). Howard was not an emergency services provider but rather was a street department employee with regular working hours. The fact that he chose to work overtime during a snowstorm did not convert his employment into an emergency services job. The Board's findings were amply supported by the evidence. Furthermore, the Board's findings sufficiently established that the facts of this case did not fit within the emergency services exception of K.S.A. 44-508(f).

*Journey as Substantial Part of Service Exception*

Barbara next cites to the following exception that was recognized by our Supreme Court in *Soupene*, 265 Kan. 217, Syl. ¶ 1:

"The going and coming rule of K.S.A. 44-508(f), excluding off-premises injuries during travel to and from work from coverage under the Workers Compensation Act, does not apply if the making of the journey, or the special degree of incon-

venience or urgency under which it is made, whether or not separately compensated for, is in itself a substantial part of the service for which the worker is employed."

In order to understand the above statement, it is necessary to briefly review the facts of *Soupene*. In that case, a volunteer firefighter was killed in a car accident while responding to a fire call. Soupene's estate sued Lignitz, the driver of the other car who was also a volunteer firefighter. Our Supreme Court affirmed the trial court's grant of summary judgment and its holding that both Soupene and Lignitz were covered under the Act. 265 Kan. at 225-27.

After Soupene's accident but during the course of the case, the legislature enacted the emergency services exception. One of the arguments on appeal was that this exception changed existing law and that volunteer firefighters on their way to the station were not previously covered under the Act. Our Supreme Court disagreed with this argument and determined that the going and coming rule did not apply to volunteer firefighters responding to an emergency. 265 Kan. at 220-26. In determining that Soupene's accident occurred in the course of employment, our Supreme Court reasoned:

"Responding to emergency calls is an integral and necessary part of a volunteer firefighter's duties, which entails a special degree of inconvenience and urgency. When an emergency call is received, volunteer firefighters are expected to report either to the fire station or to the site of the fire. Volunteer firefighters have no set hours of employment, but rather are on call and assume the duties of their employment when they receive an emergency call and begin to respond." 265 Kan. at 225.

Our Supreme Court went on to determine that Soupene's accident occurred in the course of his employment as Soupene had assumed the duties of his employment when he began responding to the emergency call. 265 Kan. at 225.

It is apparent that the facts of *Soupene* are very different from the facts of this case. In contrast to Soupene's irregular schedule as a volunteer firefighter, Howard had regular working hours. While Soupene was required to urgently respond to a call from whatever location he was at, Howard's decision to work overtime was voluntary.

In order to fit within the journey as a substantial part of the service exception recognized in *Soupene*, it must be shown that Howard's trip to work, or the special degree of inconvenience or urgency under which it was made, *must have been a substantial part of the service for which he was employed.*

Barbara contends that the Board erred in failing to consider and apply the *Soupene* exception to the facts of the instant case. Barbara's contention that the Board did not consider this exception is simply not true. Although the Board did not differentiate the exception recognized in *Soupene* from the emergency services exception, it is apparent that the Board considered the *Soupene* case and applied its reasoning to the facts of this case. Specifically, the Board determined that Howard's job "did not require him to regularly respond to emergency calls and, therefore, that was not an integral and necessary part of his duties." The Board further determined that Howard's job did not entail a "special degree of inconvenience or urgency." In addition, the Board found that there was not a sense of urgency when Howard responded to the request to work overtime as he finished having a cup of coffee before leaving for work.

Substantial competent evidence exists in the record to support these findings made by the Board. Furthermore, these findings were sufficient to conclude that Howard's death did not come within the *Soupene* exception. As discussed previously, Howard's normal working hours were Monday through Friday, 7:30 a.m. to 4:30 p.m. His job as an equipment operator II did not require him to come in to clear snow on a Saturday. He could accept or refuse the opportunity to work overtime. Howard was not paid for his overtime work until he reported to his place of employment for the City. Consequently, Howard's trip to report to work to clear snow on a Saturday was not a substantial part of his services with the City. As a result, he does not fit within this exception.

Affirmed.