IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 113,117

JESSE J. ATKINS,
*Appellant*,

v.

WEBCON

and

KANSAS BUILDING INDUSTRY WORKERS COMPENSATION FUND,
*Appellees.*

SYLLABUS BY THE COURT

1.

Although the interpretation or construction of the Kansas Workers Compensation Act, K.S.A. 44-501 et seq., is a question of law, once the interpretation or construction has occurred, the ultimate question of whether an accident arose out of and in the course of employment is a question of fact.

2.

An injury happens in the course of employment when it occurs within the period of the employment, at a place where the employee reasonably may be, and while the employee is fulfilling work duties or engaged in doing something incidental to those duties.

Review of the judgment of the Court of Appeals in an unpublished opinion filed January 22, 2016. Appeal from the Workers Compensation Board. Opinion filed June 8, 2018. Judgment of the Court of Appeals affirming the decision of the Workers Compensation Board is affirmed. Decision of the Workers Compensation Board is affirmed.

1

*Melinda G. Young*, of Bretz & Young, of Hutchinson, argued the cause and was on the brief for appellant.

*Roy T. Artman*, general counsel, Kansas Building Industry Workers Compensation Fund, argued the cause and was on the brief for appellees.

The opinion of the court was delivered by

STEGALL, J.: In the early morning hours of June 16, 2009, Jesse J. Atkins was walking from a bar to his hotel when he was hit by a drunk driver. He suffered catastrophic injuries. At the time, Atkins was a laborer working an out-of-town roofing job. Atkins sought workers compensation benefits, but the Workers Compensation Board denied compensation, finding Atkins' injuries did not arise out of and in the course of his employment. The Court of Appeals affirmed. We hold substantial evidence supports the Board's decision to deny benefits.

## FACTUAL AND PROCEDURAL BACKGROUND

The relevant facts in this case are not in dispute. Atkins worked for Webcon, Inc. as a general laborer. Webcon was a Hutchinson-based commercial roofing company. It employed multiple work crews and contracted for both local and out-of-state jobs. Crew members were paid hourly and would receive a small bonus if they finished the job on time.

At the time of his injuries, Atkins was working on a crew that was reroofing a grain elevator in Enid, Oklahoma. Webcon expected it would take several months to complete the job. Atkins was considered part of Webcon's "core group" of laborers who were typically assigned to large or difficult projects. For this job, the crew would meet on Monday mornings at Webcon's premises, load into company trucks, and travel to Enid for

2

the week. The crew returned to Hutchinson on Friday afternoons. They were paid while traveling between Hutchinson and Enid. Although crew members were ostensibly permitted to drive their personal vehicles to Enid, Webcon would not have reimbursed them for fuel or mileage. Not surprisingly, crew members never asked to drive their own vehicles.

While in Enid, the crew stayed at the Baymont Inn, which Webcon selected. Each room housed two crew members. Webcon paid for the room and all meals. Crew members also received an additional $25 payment for each night they stayed in Enid. Each work day around 6 or 7 a.m., the crew left the hotel in company trucks to travel to the worksite; they returned to the hotel around 6 or 7 p.m. Crew members were paid from the time they departed until they arrived back at the Baymont. Upon their return, crew members were no longer under Webcon's supervision and were free to do what they wished. Crew members were permitted to use the company trucks to run errands if they received permission from a foreman. However, they were not permitted to take a company truck to a bar.

Across the street from the Baymont was a Ramada Inn. Unlike the Baymont, the Ramada had a bar. It was common for crew members to walk to the Ramada after work to have drinks. On the evening of June 15, 2009, the crew returned from the worksite and grilled dinner together at the Baymont. After dinner, Atkins and a coworker, Nick Wittekind, walked to the Ramada to have drinks and play darts. Wittekind eventually left around 11:30 p.m. and walked back to the Baymont by himself. At 2:20 a.m., Atkins was walking alone back to the Baymont when he was struck by a vehicle driven by an intoxicated driver.

Atkins' injuries were severe. Doctors had to amputate his right leg, a finger, and a toe. In addition to extensive internal injuries, Atkins lost vision in his right eye and underwent several skin grafts. In October 2009, Atkins submitted an application for

3

hearing with the Division of Workers Compensation of the Kansas Department of Labor. Following a preliminary hearing, an administrative law judge (ALJ) determined Atkins' injuries were the result of a hazard created by the conditions of his employment, namely his required travel to Enid. The ALJ ordered temporary total disability and directed Webcon to pay Atkins' medical treatment. The Board affirmed the ALJ's preliminary order, reasoning that once Atkins departed from Hutchinson in a company truck, he "assumed the duties of his job and the entire undertaking [was] an indivisible one."

In April 2014, the ALJ conducted a regular hearing. The ALJ ultimately concluded travel was an intrinsic part of Atkins' job and that Atkins "was injured as the result of traveling to Enid, Ok. to complete a work related errand." As such, it found Atkins' injuries arose out of and occurred in the course of his employment.

The Board reversed, disagreeing that travel was intrinsic to Atkins' work. Relying on a pair of Court of Appeals' opinions, the Board determined Atkins was a fixed-situs employee who was not at work at the time of his injuries. It concluded:

> "Claimant was not at work in his employer's service at the time of his injury, nor did his injury arise out of the nature, conditions, obligations or incidents of his employment with respondent. Claimant's work day ended when he was delivered to the Baymont Inn. Claimant's time spent at the Ramada Inn bar had no connection to his employment. Respondent received no benefit from claimant spending time at a bar and walking back to his room at 2:25 in the morning. Claimant was not engaged in a custom of his employment or activity contemplated as work-related by respondent."

The Court of Appeals affirmed the Board's decision, and we granted Atkins' petition for review. *Atkins v. Webcon*, No. 113,117, 2016 WL 299084 (Kan. App. 2016) (unpublished opinion).

4

ANALYSIS

The only contested issue is whether Atkins' injuries arose out of and in the course of his employment as defined by the Kansas Workers Compensation Act (KWCA), K.S.A. 44-501 et seq.

*Standards of Review*

Pursuant to the KWCA, the Kansas Judicial Review Act (KJRA), K.S.A. 77-601 et seq., governs our review. See K.S.A. 2008 Supp. 44-556(a) (expressly adopting the KJRA as the means by which courts review Board actions). The KWCA further provides that "[s]uch review shall be upon questions of law." K.S.A. 2008 Supp. 44-556(a). We have stated numerous times that "[t]he determination of whether the Board's findings of fact are supported by substantial competent evidence is such a question of law." *Titterington v. Brooke Insurance*, 277 Kan. 888, 894, 89 P.3d 643 (2004); see *Scott v. Hughes*, 294 Kan. 403, 415, 275 P.3d 890 (2012) (*Scott II*); *Mudd v. Neosho Memorial Regional Med. Center*, 275 Kan. 187, 191, 62 P.3d 236 (2003); *Griffin v. Dale Willey Pontiac-Cadillac-GMC Truck, Inc.*, 268 Kan. 33, 34, 991 P.2d 406 (1999).

Indeed, while the interpretation or construction of the KWCA is a question of law, "once that interpretation or construction has occurred, the ultimate question of whether an accident arises out of and in the course of employment is a question of fact." *Scott*, 294 Kan. at 415; see *Williams v. Petromark Drilling,* 299 Kan. 792, 795, 326 P.3d 1057 (2014) ("If there was substantial competent evidence to support the Board's finding that the tire blowout occurred while [employee] was in the course and scope of his employment, . . . then the Court of Appeals' limited role required it to affirm the Board."); *Foos v. Terminix*, 277 Kan. 687, 691, 89 P.3d 546 (2004) ("[W]hether there has been an accidental injury arising out of and in the course of employment is a question of fact, and its determination will not be disturbed by an appellate court where there is substantial

5

evidence to sustain it."); *Newman v. Bennett*, 212 Kan. 562, Syl. ¶ 3, 512 P.2d 497 (1973) ("Whether an accident arises out of and in the course of the workman's employment depends upon the facts peculiar to the particular case."); *Carter v. Alpha Kappa Lambda Fraternity*, 197 Kan. 374, 376, 417 P.2d 137 (1966) ("The question of whether there has been an accidental injury arising out of and in the course of the employment is a question of fact and when determined by the district court the finding will not be disturbed by this court where there is substantial evidence to sustain it."); see also *Graber v. Dillon Companies*, 52 Kan. App. 2d 786, 798, 377 P.3d 1183 (2016).

Pursuant to K.S.A. 2017 Supp. 77-621(c)(7), a reviewing court shall grant relief only if "the agency action is based on a determination of fact, made or implied by the agency, that is not supported to the appropriate standard of proof by evidence that is substantial when viewed in light of the record as a whole[.]" When reviewing an agency action under K.S.A. 2017 Supp. 77-621(c)(7), "'the appellate court is limited to ascertaining from the record *if substantial competent evidence supports the agency findings*.'" *Bd. of Cherokee County Comm'rs v. Kansas Racing & Gaming Comm'n*, 306 Kan. 298, 326, 393 P.3d 601 (2017). "'Substantial competent evidence possesses both relevance and substance and provides a substantial basis of fact from which the issues can be reasonably determined.'" *In re Equalization Appeal of Wagner*, 304 Kan. 587, 599, 372 P.3d 1226 (2016); see *Kotnour v. City of Overland Park*, 43 Kan. App. 2d 833, 837, 233 P.3d 299 (2010) ("Although [K.S.A. 77-621] does not define the term 'substantial evidence,' case law has long stated that it is such evidence as a reasonable person might accept as being sufficient to support a conclusion.").

K.S.A. 2017 Supp. 77-621(d) dictates how to conduct such a review:

"For purposes of this section, 'in light of the record as a whole' means that the adequacy of the evidence in the record before the court to support a particular finding of fact shall be judged in light of all the relevant evidence in the record cited by any party

6

that detracts from such finding as well as all of the relevant evidence in the record, compiled pursuant to K.S.A. 77-620, and amendments thereto, cited by any party that supports such finding, including any determinations of veracity by the presiding officer who personally observed the demeanor of the witness and the agency's explanation of why the relevant evidence in the record supports its material findings of fact. In reviewing the evidence in light of the record as a whole, the court shall not reweigh the evidence or engage in de novo review."

Subsection (d) was added to K.S.A. 77-621 only a few days after Atkins was injured. See L. 2009, ch. 109, § 28. Prior to the statutory change, courts upheld Board findings even though there was evidence in the record to support contrary findings. See *Hall v. Dillon Companies, Inc.*, 286 Kan. 777, 780, 189 P.3d 508 (2008). The insertion of (d) altered an appellate court's analysis in three ways:  "(1) It requires review of the evidence both supporting and contradicting the Board's findings; (2) it requires an examination of the presiding officer's credibility determination, if any; and (3) it requires review of the agency's explanation as to why the evidence supports its findings." *Redd v. Kansas Truck Center*, 291 Kan. 176, 182, 239 P.3d 66 (2010). Because "the KJRA provisions in effect at the time of the agency action are controlling[,]" and the Board denied benefits on January 7, 2015, the new substantial competent evidence standard applies in this case. See 291 Kan. at 183.

That said, interpreting the statutory phrase "arising out of and in the course of employment" is a question of law, not fact. See *Scott v. Hughes*, 281 Kan. 642, 644, 132 P.3d 889 (2006) (*Scott I*) ("[T]he potentially dispositive legal question in this appeal is one requiring interpretation of the Workers Compensation Act . . . . Statutory interpretation and construction present questions of law over which this court's review is unlimited."). If the Board's decision is premised on an error of law, it will be infirm regardless of its findings of fact, though those same findings may still support the result when the error of law is remedied. See *In re Tax Exemption Application of Westboro Baptist Church*, 40 Kan. App. 2d 27, 49, 189 P.3d 535 (2008) ("[W]hen an agency

7

tribunal reaches the right result, its decision will be upheld even though the tribunal relied upon the wrong ground or assigned erroneous reasons for its decision.") (citing *In re Tax Appeal of Colorado Interstate Gas Co.*, 258 Kan. 310, 317, 903 P.2d 154 [1995]). We do not defer to an ALJ's or the Board's interpretation of a workers compensation statute. *Douglas v. Ad Astra Information Systems*, 296 Kan. 552, 559, 293 P.3d 723 (2013). Courts apply the KWCA impartially to both employers and employees. K.S.A. 2008 Supp. 44-501(g); *Scott I*, 281 Kan. at 645. Atkins carries the burden of demonstrating his injuries arose out of and in the course of his employment. See K.S.A. 2008 Supp. 44-501(a).

*Atkins' injuries did not arise out of or in the course of his employment.*

An employer is liable to pay compensation for an employee's "personal injury by accident arising out of and in the course of employment." K.S.A. 2008 Supp. 44-501(a).

"'The two phrases arising "out of" and "in the course of" employment, as used in our Workers Compensation Act, K.S.A. 44-501 *et seq.*, have separate and distinct meanings; they are conjunctive, and each condition must exist before compensation is allowable. The phrase "*out of*" employment points to the cause or origin of the worker's accident and requires some causal connection between the accidental injury and the employment. An injury arises "out of" employment when there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury. Thus, an injury arises "out of" employment if it arises out of the nature, conditions, obligations, and incidents of the employment. The phrase "*in the course of*" employment relates to the time, place, and circumstances under which the accident occurred and means the injury happened while the worker was at work in the employer's service. [Citations omitted.]'" *Scott II*, 294 Kan. at 416.

We have long stated an injury happens *in the course of* employment "'when it takes place within the period of the employment, at a place where the employee

8

reasonably may be, and while the employee is fulfilling work duties or engaged in doing something incidental thereto.'" *Sumner v. Meier's Ready Mix, Inc.*, 282 Kan. 283, 288, 144 P.3d 668 (2006) (quoting 1 Larson's Workers' Compensation Law § 12, p. 12-1 [1999]); see *Estate of Soupene v. Lignitz*, 265 Kan. 217, 222-23, 960 P.2d 205 (1998) (same); *Fairchild v. Prairie Oil & Gas Co.*, 138 Kan. 651, 655, 27 P.2d 209 (1933) ("'An injury occurs in the course of employment when it is within the period of the employment at a place where the employee reasonably may be in performing his duties, and while he is fulfilling those duties or engaged in doing something incidental thereto.'"). And although it is impossible to establish a bright-line test to determine whether an injury arises out of employment, "the focus of inquiry should be on whether the activity that results in injury is connected to, or is inherent in, the performance of the job." *Bryant v. Midwest Staff Solutions, Inc.*, 292 Kan. 585, 596, 257 P.3d 255 (2011); see *Moore v. Venture Corp.*, 51 Kan. App. 2d 132, 140, 343 P.3d 114 (2015). Simply put, "'[t]he right to compensation benefits depends on one simple test: Was there a work-connected injury?'" *Bryant*, 292 Kan. at 595.

In defining the words "arising out of and in the course of employment," the Legislature has stated:

> "The words 'arising out of and in the course of employment' . . . shall not be construed to include injuries to the employee occurring while the employee is on the way to assume the duties of the employment or after leaving such duties, the proximate cause of which injury is not the employer's negligence. . . .

> "The words, 'arising out of and in the course of employment' as used in the workers compensation act shall not be construed to include injuries to employees while engaged in recreational or social events under circumstances where the employee was under no duty to attend and where the injury did not result from the performance of tasks related to the employee's normal job duties or as specifically instructed to be performed by the employer." K.S.A. 2008 Supp. 44-508(f).

9

The first paragraph of subsection (f)—which is currently located in K.S.A. 2017 Supp. 44-508(f)(3)(B)—codifies the longstanding "going and coming rule." See, e.g., *Chapman v. Victory Sand & Stone Co.*, 197 Kan. 377, 382, 416 P.2d 754 (1966) (noting it was first codified in 1917). The going and coming "rule," however, is more aptly characterized as a statutorily defined "exclusion" to the "arising out of and in the course of employment" language in the KWCA. See *Sumner*, 282 Kan. at 288. "In other words, a worker who is traveling to and from work is not generally covered by the Act because mere travel to and from work does not, by definition, arise out of and in the course of employment." *Scott*, 294 Kan. at 414. Because an employee travelling to and from work faces the same risks and hazards as the general public, the risks encountered are not causally related to employment. *Thompson v. Law Offices of Alan Joseph*, 256 Kan. 36, 46, 883 P.2d 768 (1994).

Atkins invokes the "going and coming rule" to coverage under the KWCA in order to get to what is commonly referred to as an exception to the "rule"—the "intrinsic travel exception." But the intrinsic travel exception is not so much an exception as it is an exercise in statutory interpretation. When interpreting the going and coming exclusion, we have recognized that when travel is an intrinsic part of the employee's job, the employee has already assumed the duties of his or her employment when they are "going and coming." See *Williams*, 299 Kan. at 795 ("If there was substantial competent evidence to support the Board's finding that the tire blowout occurred while Williams was in the course and scope of his employment, *i.e.*, during travel intrinsic to his duties for Petromark, then the Court of Appeals' limited role required it to affirm the Board."); *Scott II*, 294 Kan. at 421 ("If travel to the job site on the morning of the accident was an intrinsic aspect of Hughes' job, then the going and coming rule did not apply to remove him from the Act; he was within the course and scope of his employment and was entitled to fellow servant immunity from plaintiffs' civil suits."); *Estate of Soupene*, 265 Kan. at 225 ("[T]he accident occurred in the course of Soupene's employment, as he had

10

assumed the duties related to his employment when he began responding the emergency call."); *Kennedy v. Hull & Dillon Packing Co.*, 130 Kan. 191, 196, 285 P. 536 (1930) (a travelling salesman's "employment enjoined upon him traveling from place to place within his territory almost continuously in the discharge of his duties. He was using the highway in his employer's service when he was injured and was much more exposed to its hazards than people generally.").

Thus, although we have often referred to the intrinsic travel "exception," it is no more an exception than the going and coming rule is a rule. That is, the inherent travel exception is an interpretive explanation of the contours of K.S.A. 2008 Supp. 44-508(f). Equipped with this understanding of the statute, fact-finders can then discern whether "the employee has already assumed the duties of employment once he or she heads out for the day's work." *Halford v. Nowak Construction Co.*, 39 Kan. App. 2d 935, 942, 186 P.3d 206 (2008) (Leben, J., concurring); see *Craig v. Val Energy, Inc.*, 47 Kan. App. 2d 164, 168, 274 P.3d 650 (2012) (explaining that the inherent travel "exception" is merely a "method to determine whether an employee has already assumed the duties of employment when he or she is going to or returning from work").

Here, Atkins has availed himself of this court-made maze of "rules" and "exceptions" to the rules (along with the attendant caselaw) to claim that because travel to Enid, Oklahoma, was intrinsic to his job, his injuries must be compensable. Both the Board and the Court of Appeals followed Atkins down this analytical path, though each concluded travel was not intrinsic because Atkins had become a "fixed-situs" employee who had established a temporary residence at the Baymont. See *Atkins*, 2016 WL 299084, at *5-6 (citing *Butera v. Fluor Daniel Construction Corp.*, 28 Kan. App. 2d 542, 18 P.3d 278 [2001], and *Ostmeyer v. Amedistaff, L.L.C.*, No. 101,909, 2009 WL 4931359 [Kan. App. 2009] [unpublished opinion]).

11

We conclude that pursuing this line of analysis concerning whether travel was intrinsic to Atkins' work needlessly complicated this case. Once our focus is returned to its proper place—Did Atkins' injuries arise out of and in the course of employment?—it quickly becomes apparent that the going and coming exclusion contained in K.S.A. 2008 Supp. 44-508(f) is simply irrelevant.

Atkins essentially contends that the going and coming exclusion cannot be invoked against him to deny coverage under the KWCA because the intrinsic travel exception applies to him. We agree with Atkins that the going and coming exclusion is inapposite here, but not because of the intrinsic travel exception. Rather, the facts simply demonstrate that Atkins was not going to or coming from work when he was injured. Atkins and Wittekind walked to the bar after dinner to have a few drinks and unwind after a day of work. While at the bar, Atkins was not fulfilling a work related duty. While walking from the bar back to his hotel room in the early morning hours, Atkins was not on the way to assuming any of the duties of his employment. The plain language of K.S.A. 2008 Supp. 44-508(f), therefore, makes it clear the going and coming exclusion is not at issue here.

The whole tenor of the dispute below, however, suggests an assumption by everyone that if the "intrinsic travel exception" applied, Atkins' injuries must be compensable. But that approach simply begs the more basic factual question as to whether the injuries arose out of and in the course of employment. It is on this more fundamental ground that the case can be decided—and decided with relative ease.

Reviewing the record as a whole, we conclude substantial competent evidence supports the Board's ultimate finding that Atkins' injuries did not arise out of and in the course of his employment. Atkins' injuries did not occur while he was fulfilling work duties or doing something incidental to those duties. See *Sumner*, 282 Kan. at 288. Staying at the Baymont Inn while the roofing crew was in Enid may have been incidental

12

to his work duties. If Atkins' injuries had arisen from that fact—in a hotel fire for example—we would have a different case and possibly a different result. But his presence at the hotel is not the operative fact in this case. Atkins was injured while walking between a bar and the hotel in the middle of the night. And that activity is too far removed from any of Atkins' work duties to properly be described as incidental to those duties.

We recognize Atkins suffered traumatic injuries, and we are sympathetic to how his life has been drastically altered by them. But applying the law to the facts, we conclude the findings of fact supported by substantial competent evidence demonstrate that those injuries did not arise out of or in the course of his employment. See *Bryant*, 292 Kan. at 595. Accordingly, we affirm the Court of Appeals as being right for the wrong reason. See *Whye v. City Council for City of Topeka*, 278 Kan. 458, 464, 102 P.3d 384 (2004) ("The Court of Appeals is affirmed as right for the wrong reason.").

Affirmed.